(No. 36098

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BUSTER POLAND, Plaintiff in Error.

*Opinion filed May 19, 1961.*

ARTHUR BRODY, of Chicago, (LOWELL B. KOMIE, of counsel,) for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and JOHN T. GALLAGHER, and JAMES R. THOMPSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Defendant was convicted of the murder of his wife and sentenced to the penitentiary for a term of 99 years. He brings this writ of error under Rule 65—1 to review his conviction, contending that he is entitled to discharge because he was not tried within the time provided by law and that prejudicial error was committed in the admission of evidence. We shall deal with these contentions in order.

Section 18 of division XIII of the Criminal Code (Ill. Rev. Stat. 1955, chap. 38, par. 748) provides that any person committed for a capital offense and not admitted to bail and not tried within four months of the date of commitment shall be set at liberty by the court, unless the delay occurs on application of the prisoner, or unless the court is satisfied that due exertion has been made to procure the evidence on behalf of the People and that there is reasonable ground to believe that the evidence may be procured at a later day, in which case the court may continue the cause for not more than 60 days. Defendant was committed on November 3, 1955. The four-month period prescribed by statute would have expired on March 3, 1956. On February 29, 1956, the prosecution moved for a continuance on the ground that Sophia Poland, alleged to be an eyewitness to

the crime, could not be located although due exertion had been made to secure her attendance for the trial. On the same day, the court continued the cause to April 2, 1956. Defendant argues that the continuance should not have been granted because there was no adequate showing of due exertion to secure the witness and also because, according to defendant's argument, it can now be inferred from the tactics of the prosecution at the trial that the prosecution never really intended to use Sophia Poland, the defendant's mother, as a witness but used her as a pretense to obtain a continuance.

The question of whether a continuance should be granted must, of necessity, rest in the discretion of the trial judge, and his action in granting or denying a continuance will not be disturbed unless there has been a clear abuse of discretion. In determining whether the granting of the continuance was a reasonable exercise of discretion, the situation must be viewed as it was presented to the trial judge at the time, not as it might appear in retrospect in the light of subsequent events. Here the showing of grounds for a continuance was stronger than in *People* v. *Tamborski,* 415 Ill. 466, where the granting of a continuance was sustained. Under the circumstances, we must assume that the court was satisfied that due exertion had been made to secure the evidence and that there were reasonable grounds for believing that it could be procured at a later date. The continuance was granted before the expiration of the four-month period and was well within the sixty days authorized by the statute. We cannot say that the trial judge abused his discretion in granting the continuance. The defendant, therefore, is not entitled to be discharged on the ground that he was not tried within the time provided by law.

There is no question but that the evidence in the record, if properly before the jury, was sufficient to prove the defendant guilty beyond a reasonable doubt. Defendant contends, however, that the trial court committed error in rul-

ing on the admission of evidence, and that the error was sufficiently prejudicial to require a reversal.

The most serious evidentiary question concerns the admission of testimony of a neighbor, Patricia Hansen, as to what was said to her by defendant's mother, Sophia Poland. This testimony was admitted in evidence, over defendant's objection, as an exception to the hearsay rule. An understanding of the problem presented requires a summary of the testimony of Mrs. Hansen.

Mrs. Hansen was a neighbor of the Polands and lived in the same building in a first-floor apartment, immediately below the second-floor apartment occupied by the Polands. She testified that she was in her apartment when she heard a commotion upstairs. Two people were arguing. She identified one of the voices as that of Maria Poland, the wife of defendant. The other voice, that of a man, was not definitely identified by the witness. Mrs. Hansen heard Maria use the word "Buster" five or six times during the course of the commotion. She testified that, at one point, she heard Maria Poland scream, "No, Buster, don't," and then heard a thud. A few minutes later she again heard Maria say, "No, Buster, don't," and heard another thud. The thuds sounded like somebody falling to the floor. Mrs. Hansen testified that about three minutes after the last thud she heard Maria Poland running down the front stairs yelling, "No, Buster, don't!" Then she heard three shots. Immediately after the shots, she heard pounding on her back door. She ran to the back door and opened it and saw Mrs. Sophia Poland, the defendant's mother, an elderly woman, clad in her nightdress with a housecoat over it and wearing house slippers. Mrs. Hansen testified, over defendant's objection, that, as soon as she opened the door, Sophia Poland said, "Oh, my God, Pat, Buster just shot Maria, and he is going up to school to kill the kids and himself." This testimony as to the declaration of Sophia Poland was admitted, apparently under the so-called *res gestae* excep-

tion to the hearsay rule. Defendant contends that the declaration was improperly admitted for three reasons: (1) the declaration is not a *res gestae* declaration, (2) no proper foundation had been laid for the admission of the declaration since there was nothing to show that the declarant was present when the shooting occurred, and (3) the contents of the declaration are not competent evidence, but merely represent the declarant's conclusion.

We see no useful purpose to be served in dealing with the problem by using the term *"res gestae."* That amorphous concept has been applied indiscriminately to a multitude of situations, some of which contain no element of hearsay at all, while others involve true exceptions to the hearsay rule. As applied to the situation involved here, we think that the term *"res gestae"* not only fails to contribute to an understanding of the problem but may actually inhibit any reasonable analysis. We prefer, therefore, to use less confusing terminology in discussing the problem.

There has emerged, as a recognized exception to the hearsay rule, the principle that, under certain conditions, what have been variously characterized as "spontaneous declarations" or "excited utterances" are properly admissible as an exception to the hearsay rule. Perhaps the classic statement of the reason underlying this exception is that of Wigmore (6 Wigmore, Evidence, 3d ed., sec. 1747):

"This general principle is based upon the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as par-

ticularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts."

The rule has been succinctly stated by the Supreme Court of California: "When a declaration is made under the immediate influence of the occurrence to which it relates and so near in time as to negative any probability of fabrication, said declaration is admissible." *Showalter v. Western Pacific Railroad Co.* 16 Cal.2d 460, 106 P.2d 895, 899.

Three factors are necessary to bring a statement within this exception to the hearsay rule: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence. (6 Wigmore, Evidence, 3d ed. sec. 1950; Cleary, Handbook of Illinois Evidence, sec. 13.28.) All three factors appear present with respect to the statement of Sophia Poland. Defendant argues that this is not a "classic *res gestae* declaration" since it was not made by a participant in the exciting occurrence, nor was it made at the exact time and place of the occurrence. Under the foregoing analysis, however, these factors are not controlling. The declaration need not have been made by a participant, but may be that of a bystander. Nor does the fact that the statement did not coincide exactly in time and place with the event control. The pertinent point is whether there was a lack of sufficient time to allow an opportunity for reflection and invention. We think that requirement is fully satisfied here.

Defendant further contends that a proper foundation was not laid for the admission of Sophia Poland's declaration, because there was no showing that she was actually present at the scene of the occurrence. Defendant's argument at this point is twofold. First, he contends that there

is no evidence placing Sophia Poland in the upstairs apartment during the commotion that immediately preceded the shooting. Secondly, defendant argues, that even if it is assumed that Sophia Poland was in the apartment during the commotion, there is no showing that she actually saw Buster kill Maria, and, therefore, her statement to that effect is merely her conclusion and not testimonially competent evidence. The first part of the argument is without merit. The evidence shows that Sophia Poland resided in the upstairs apartment with her son and his wife, and there was testimony definitely establishing her presence there at an earlier hour on the day of the shooting. Under the circumstances, the sudden appearance on a November day of this elderly woman at Mrs. Hansen's back door, immediately after the shooting, clad in night dress and slippers, and the fact that she at once voiced the excited utterance in question, leave no room for any inference but that she had come directly from the upstairs apartment and had been present during the commotion.

Defendant further argues that, even assuming that Sophia Poland was present in the upstairs apartment, there is nothing to show that she saw the actual shooting, and that in the absence of such a showing the declaration was inadmissible. In support of this contention, defendant cites 6 Wigmore, Evidence, 3d ed. sec. 1751, where the author states:

"Upon the ordinary principle applicable to all testimonial evidence, and therefore to hearsay statements offered under these exceptions, the declarant must appear to have had *an opportunity to observe personally* the matter of which he speaks. This requirement is in practice usually fulfilled in the case of all declarations otherwise admissible, for they are made by injured persons or others present and concern the circumstances of the injury as observed by them; and thus no occasion arises for calling attention to

the requirement. Nevertheless in an appropriate case, it would without doubt be enforced, for example, if a passenger in a railroad collision should exclaim, "The engineer did not reverse the lever," or "The conductor did not read the train dispatcher's orders."

The cases suggested by Wigmore are clearly distinguishable from the instant situation. In each of Wigmore's illustrations, it is obvious that the declarant did not and could not have observed personally the matters stated in the declaration. Here, on the contrary, there is nothing to indicate that Sophia Poland could not have seen or did not see the killing, and there is a strong inference from the declaration itself and the surrounding circumstances that she did. We do not understand the requirement to be that the party seeking to have the declaration admitted must prove by direct evidence beyond any possibility of speculation that the declarant personally observed the matters. If such were the rule, there would hardly ever be a case in which a declaration would be admissible. Rather, we think it is sufficient if it appears inferentially that the declarant personally observed such matters and that there is nothing to make a contrary inference more probable. (Cf. *New York Chicago & St. Louis Railroad Co.* v. *Kovatch,* 120 Ohio St. 532, 166 N.E. 682.) Such was the case here, and the court did not err in allowing the declaration of Sophia Poland to be admitted in evidence.

Defendant's next assignment of error concerns the testimony of Victor Kula, a judge of the municipal court of Chicago, who testified concerning a nonsupport proceeding brought by Maria Poland against Buster Poland in October, 1955, less than a month before the murder. Judge Kula testified that at a hearing before him, Maria Poland, under oath and in the presence of the defendant, stated that on about October 5, 1955, defendant had threatened her life, and that, in response to his wife's accusation, defend-

ant said that he was sorry and wouldn't do it again. In our opinion, this testimony was competent as bearing upon defendant's motive and also to show that he had threatened the life of his wife. (*People* v. *Scott,* 284 Ill. 465, 474.) Since there was no court reporter to record the testimony at the hearing in the nonsupport proceeding, we can see no valid objection to proving what transpired at that hearing by the testimony of Judge Kula.

Finally defendant contends that the testimony of certain witnesses, whose names had not, prior to trial, been furnished to defendant, should have been excluded. Seven witnesses whose names were not endorsed on the back of the indictment testified for the People. The testimony of only two of these witnesses was objected to. The record indicates that the court gave an opportunity to interview one of these witnesses but that defense counsel did not take advantage of this opportunity. The defendant did not ask for a continuance, nor did he do anything else to show that he was taken by surprise or prejudiced by failure to receive the names earlier, and proceeded with the trial. We have held that it is within the discretion of the trial court to allow witnesses to testify whose names are not endorsed on the back of the indictment or included in the list of witnesses furnished by the People, and the exercise of that discretion will not be reviewed unless it appears that the defendant has been taken by surprise, and the burden of showing this is upon the defendant. (*People* v. *Weisberg,* 396 Ill. 412.) Under the circumstances, we cannot say that the trial judge abused this discretion.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*