LENORA E. THOMAS *et al.*, Plaintiffs-Appellees, *v.* ELIZABETH O. GOODMAN, Defendant-Appellant.

Fifth District   No. 76-324

Opinion filed July 5, 1977.

Mitchell & Schoen, of Carbondale, for appellant.

Don R. Lucas & Associates, Ltd., of West Frankfort (Don R. Lucas, of counsel), for appellees.

Mr. PRESIDING JUSTICE CARTER delivered the opinion of the court:

The plaintiffs, Lenora E. Thomas and her daughter, Debra Thomas, brought suit in the Circuit Court of Franklin County against the defendant, Elizabeth O. Goodman. The plaintiffs sought damages which resulted from an automobile collision involving the parties on November 24, 1974. The jury returned a verdict for plaintiffs, awarding Lenora Thomas, the driver of the Thomas automobile, the sum of $15,000 and Debra Thomas the sum of $7,000. The jury answered "No" to the special interrogatory: "Was Lenora E. Thomas before or at the time of the occurrence in question guilty of contributory negligence which was a proximate cause of the accident and her injuries?" The court entered judgment on the verdicts, and the defendant appeals.

Defendant was called as an adverse witness pursuant to section 60 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 60). She testified that she had been traveling in a northwesterly direction on a blacktop road which intersects, but does not cross, Illinois Route 149 at approximately a 135-degree angle. After having stopped at the stop sign at the intersection, she looked in both directions and made a right-hand turn in order to travel in an easterly direction toward West Frankfort. A railroad crossing crosses Route 149 approximately 10 to 15 feet east of the intersection. She further testified that defendant's and plaintiffs' vehicles collided in the eastbound lane of traffic on the east side of the railroad tracks and that she never entered plaintiffs' westbound lane of traffic.

Plaintiffs testified that the collision occurred in the westbound lane of traffic. The plaintiffs were traveling in a westerly direction on Illinois Route 149 between West Frankfort and Ziegler, Illinois. Lenora was driving and Debra was sitting in the front passenger seat. They testified that defendant failed to stop at the intersection and entered into the westbound lane of traffic. In order to try to avoid a collision, Lenora pulled off the highway onto the shoulder. Due to the close proximity of a

railroad signal, she pulled back onto the highway, and the collision occurred. Although the Thomas vehicle was equipped with seatbelts, neither plaintiff utilized them at the time of the collision. Due to the collision, Debra was thrown forward and struck the windshield while Lenora's head struck the rearview mirror and her knees hit the dashboard.

West Frankfort Police Officer Donald Graskewicz testified that he was called to the accident scene in order to aid the injured and to direct traffic. He did not make an investigation of the accident, because the collision occurred outside the West Frankfort city limits where the Illinois State Police had jurisdiction. Officer Graskewicz thought the debris from the collision was in the eastbound lane as was depicted in a photograph. Over defense objection, he testified that the intersection was hazardous, because a person turning east from the blacktop onto Route 149 would encounter problems staying in the eastbound lane of traffic.

State Trooper Jack Grazanich testified that the intersection was hazardous for any automobile turning east, because of the narrowness of the roads and the position a driver must be in to correctly make the stop. No objection was made to this testimony. He further testified that the debris from the collision was found in the eastbound lane. It was his experience as a State trooper that, in an automobile accident, the dirt from the undercarriage of automobiles drops straight down when a collision occurs. Based on the foregoing, Trooper Grazanich was of the opinion that the collision occurred in the eastbound lane.

Dr. Richard Fox, M.D., testified to the treatment he gave the plaintiffs immediately after the accident and for several months thereafter.

Bob Martin, a friend of plaintiffs, came upon the scene of the accident soon after it occurred. He went to the Thomas' automobile and asked what had happened, to which Lenora responded that "this woman was coming from the sideroad and came across the road across the center line and I hit her." Mr. Martin saw the Thomas' groceries and volunteered to take them home. The trial court ruled that the foregoing testimony was admissible under the "excited utterance" exception to the hearsay rule.

■■ On appeal, the defendant alleges numerous errors which allegedly occurred in the trial court. The first we will consider is whether it was error to give the following instruction:

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:

Every driver of a vehicle approaching a stop intersection indicated by a 'stop' sign shall stop at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right-of-way to any vehicle which has entered the intersection from another

roadway or which is approaching so closely on the roadway as to constitute an immediate hazard.

If you decide that a party violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party was negligent before and at the time of the occurrence."

Section 11—904(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 11—904(b)) states:

"(b) Except when directed to proceed by a police officer or traffic-control signal, every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right-of-way to any vehicle which has entered the intersection from another roadway or which is approaching so closely on the roadway as to constitute an immediate hazard during the time when the driver is moving across or within the intersection, but said driver having so yielded may proceed at such time as a safe interval occurs."

In plaintiffs' brief, they contend that it was proper to omit the phrase "during the time when the driver is moving across or within the intersection, but said driver having so yielded may proceed at such time as a safe interval occurs," because the omitted clause has no basis in the evidence. Plaintiffs' theory is that once a "hazard" is created it matters not how close the other vehicle is to the intersection, if a collision occurred, defendant is liable.

This is the first time that an Illinois court of review has had to review, after a trial, the applicability of section 11—904(b) of the Illinois Vehicle Code, which became effective July 1, 1970, to actions for negligence. The prior cases involving failure to stop at an intersection were decided under section 70 of the Uniform Act Regulating Traffic on Highways, which stated:

"(b) The driver of a vehicle shall stop as required by Section 86 of this Act at the entrance to a through highway and shall yield the right-of-way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver having so yielded may proceed at such time as a safe interval occurs." (Ill. Rev. Stat. 1965, ch. 95½, par. 167(b).)

The omitted phrase was added to the Uniform Act Regulating Traffic on

Highways by amendment in 1967 (1967 Ill. Laws 1840, 1841; Ill. Rev. Stat. 1967, ch. 95½, par. 167a(b)). We have failed to find any cases decided under the 1967 amendment. The applicability of the instruction must be considered in light of the definition of intersection. It is clear that the present section 11—904(b) of the Illinois Vehicle Code codified the prior case law.

In *Pennington v. McLean,* 16 Ill. 2d 557, 158 N.E.2d 624, plaintiff's intestate's vehicle had moved slowly across the two westbound lanes of a highway into the eastbound lane when struck by defendant's automobile. The jury found for plaintiff. The appellate court ruled that plaintiff's intestate was guilty of contributory negligence as a matter of law. Our supreme court considered section 70 of the Uniform Act Regulating Traffic on Highways (Ill. Rev. Stat. 1955, ch. 95½, par. 167) and ruled that "a person approaching a preferred highway is not required to stop, either at the stop sign or at the intersection line, long enough to permit *any* car that he observes on the highway to pass, regardless of its distance from the intersection. [Citations.] The statute requires only that the motorist confronted by a stop sign may, exercising reasonable care, proceed across the intersection after he has stopped and yielded the right of way to such vehicles on the through highway as constitute an 'immediate hazard.' [Citations.]" (16 Ill. 2d 577, 583, 158 N.E.2d 624, 627.) The court went on to say that whether a driver has conformed to the standard is a question for the jury.

Like the girls in the chorus line, the facts in an intersection collision vary in detail, but the fundamentals are the same. In *Hale v. Cravens,* 129 Ill. App. 2d 466, 263 N.E.2d 593, the collision occurred while defendant was proceeding across an intersection, and the court ruled that defendant had violated the duty the statute imposes for failing to see what is in plain view or failed to continue her lookout as she entered the preferential highway. In *Hession v. Liberty Asphalt Products, Inc.,* 93 Ill. App. 2d 65, 235 N.E.2d 17, plaintiff's automobile made a U-turn across a preferential highway and was entering onto the highway for the second time without stopping when the collision occurred. The appellate court affirmed the directed verdict for the defendant and ruled that plaintiff failed to keep a proper lookout when crossing the preferential highway and was required to yield the right-of-way to any vehicle which was approaching so closely as to constitute an immediate hazard. Therefore, plaintiff was guilty of contributory negligence as a matter of law.

■■ In the case before us, the collision did not occur at the intersection as defined in section 1—132 of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 1—132).

"§1—132. Intersection. The area embraced within the prolongation or connection of the lateral curb lines, or, if none,

then the lateral boundary lines of the roadways of two highways which join one another at, or approximately at, right angles or the area within which vehicles traveling upon different roadways joining at any other angle may come in conflict.

(b) Where a highway includes two roadways 40 feet or more apart, then every crossing of each roadway of such divided highway by an intersecting highway shall be regarded as a separate intersection.

(c) The junction of an alley with a street or highway does not constitute an intersection."

Plaintiffs' vehicle was never in the intersection. The record does not establish precisely how far from the intersection the Thomas' vehicle was when hit. Defendant's vehicle had traveled at least 10 feet plus the width of the railroad track from the intersection when the collision occurred. Therefore, we conclude that it was error to give the instruction based on section 11—904(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 11—904(b)).

In addition to the theory that the proximate cause of the accident was defendant's failure to stop at the intersection, the plaintiffs had two alternative theories of defendant's negligence: (1) that she failed to keep her vehicle under proper control so as to avoid colliding with plaintiff's automobile; and (2) that she drove her automobile over the center line of Illinois Route 149 into the westbound lane of traffic when the defendant knew or should have known that by doing so someone would likely be injured. The jury returned a general verdict for the plaintiffs; therefore, we do not know on which theory the jury found for plaintiffs. We conclude, therefore, that the improper instruction resulted in prejudicial error to the defendant and we reverse and remand this case for a new trial.

■■ We will next consider alleged errors which may occur upon a retrial. The trial court refused defendant's tendered instructions that the jury could consider, together with the other evidence, plaintiffs' failure to utilize seatbelts. The uncontested evidence is that the automobile in which plaintiffs were riding was equipped with seatbelts and that plaintiffs had not availed themselves of their use at the time of the accident.

The first case to be decided in Illinois to decide the purposes for which the use or nonuse of seatbelt evidence could be used was *Mount v. McClellan*, 91 Ill. App. 2d 1, 234 N.E.2d 329. The court stated:

"The use, or nonuse of seatbelts, and expert testimony, if any, in relation thereto, is a circumstance which the trier of facts may consider, together with all other facts in evidence, in arriving at its conclusion as to whether the plaintiff has exercised due care, not

only to avoid injury to himself, but to mitigate any injury he would likely sustain. However, this element should be limited to the damage issue of the case and should not be considered by the trier of facts in determining the liability issue." 91 Ill. App. 2d 1, 5, 234 N.E.2d 329, 331.

The quoted language would seem to indicate that there need be no expert testimony concerning whether the use of seatbelts would have mitigated the damages. However, the subsequent decisions have consistently held that competent evidence must be introduced at trial which, if believed by the jury, would show that plaintiff's injury would have been mitigated if seatbelts, which were available, had been used.

In *Eichorn v. Olson*, 32 Ill. App. 3d 587, 335 N.E.2d 774, the development of the law in relation to the use of seatbelt evidence is thoroughly discussed. In *Olson*, the trial court refused to instruct the jurors that if they found that plaintiff did not avail himself of seatbelts, they could consider the effect of such nonuse on the nature and extent of his injuries. The evidence at trial disclosed that plaintiff was thrown into the front windowshield due to the collision. The *Olson* court ruled that such an instruction is not given to the jury unless the defendant can establish by competent evidence a causal relationship between the injury sustained and the plaintiff's failure to use an available seatbelt. Something more is required than the mere showing that plaintiff failed to buckle up.

We find the reasoning of the *Olson* court persuasive. No evidence was presented at trial that the damages might have been mitigated if plaintiffs had used a seatbelt. Defendant only established that plaintiffs did not buckle up. If the instruction had been given, it would have invited the jury to apportion the damages without any competent evidence on which to base such apportionment. *Schomer v. Madigan*, 120 Ill. App. 2d 107, 255 N.E.2d 620.

■■ We next consider whether the testimony of Bob Martin should have been permitted under the excited utterance exception to the hearsay rule. Three factors are necessary to bring a statement within the excited utterance exception to the hearsay rule. They are "(1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence." *People v. Poland*, 22 Ill. 2d 175, 181, 174 N.E.2d 804, 807. Defendant contends that there was time in which Lenora Thomas could fabricate the statement. The record does not indicate how soon after the accident the statement was made. It could not have been more than 15 minutes as both plaintiffs testified that the ambulance arrived approximately 15 minutes after the collision. Trial courts are vested with considerable discretion in admitting testimony which comes within the spontaneous declaration exception to the hearsay

rule, for each case must rest on its own facts. (6 Wigmore, Evidence sec. 1750, at 203-04, 221 (Chadbourn rev. ed. 1976 ); *Mangan v. F. C. Pilgrim & Co.*, 32 Ill. App. 3d 563, 336 N.E.2d 374.) We do not believe that the trial court abused its discretion in admitting the testimony of Mr. Martin. At the time the statement was made Lenora was still in her wrecked motor vehicle. Her head was cut open exposing the bone. Debra Thomas, the teenage daughter of Lenora Thomas, who was also in the collision, was bleeding from the forehead. Mr. Martin was the first person to speak to Mrs. Thomas after the collision. Surely whatever stress and excitement initially generated by that event continued even more acutely during the ensuing moments she was in pain and saw the condition of her daughter.

Defendant contends that a response to a question cannot fall within the excited utterance exception of the hearsay rule. In the case before us, Mrs. Thomas' statement was in response to Mr. Martin's inquiry, "What happened?" Defendant has not cited any cases nor has our research found any Illinois cases which has ruled a statement inadmissible under the excited utterance exception to the hearsay rule solely on the basis that the statement was made in response to a question. Whether the excited utterance is made in response to a question is but one of the circumstances on which the trial court must determine that the statement was admissible. After the excited utterance was made, Lenora responded, "Yes" to Mr. Martin's question that she would like him to take her groceries to Ziegler. This does not indicate, as defendant contends, that Lenora had the ability to fabricate the previous excited utterance.

Defendant relies on *Swearinger v. Klinger*, 91 Ill. App. 2d 251, 234 N.E.2d 60, which is inapposite to the case at bar. In *Swearinger*, the defendant made an offer of proof that Donna Swearinger, operator of a motor vehicle, told him during a conversation immediately after the accident that "I couldn't stop for the light." Donna Swearinger made the statement to a police officer approximately 15 minutes after the accident. The offer of proof was denied by the trial court. The appellate court affirmed and ruled that the statement was not excited utterance. In the case at bar, Lenora's statement was made in response to a single question by Mr. Martin and not during a conversation with Mr. Martin.

For the foregoing reasons, the judgment is reversed and the cause is remanded to the Circuit Court of Franklin County for a new trial.

Reversed and remanded.

KARNS and JONES, JJ., concur.