THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRED CHERRY, Defendant-Appellant.

Fifth District No. 79-444

Opinion filed September 10, 1980.

H. Gary Apoian, of Apoian, Ross & Funk, P. C., of East St. Louis, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Raymond F. Buckley, Jr., and Martin N. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mme JUSTICE SPOMER delivered the opinion of the court:

The defendant, Fred Cherry, was found guilty by a jury of the murder of his estranged wife and was sentenced to a term of imprisonment of 20 years. On appeal, he contends that the court erred (1) in admitting evidence of the declarations of his four-year-old daughter, Michelle Cherry; (2) in admitting evidence of a pending divorce between defendant and the victim; (3) in sustaining the prosecutor's objection to portions of defendant's closing argument; and (4) in refusing to instruct the jury that the minor child had been declared incompetent to testify.

Defendant's wife, Janet Cherry, was found shot to death in the basement of her home in the city of East St. Louis on October 25, 1978. Gazelle Russell, a 34-year-old plumber whose house was separated from the decedent's by a vacant lot, testified that on the morning of the offense, between 10 and 10:15 a.m., he was in the kitchen when he observed the defendant, with whom he was acquainted, drive up and park his car in the front of decedent's driveway. The defendant went to the back of the house and then returned to his car, sat in the driver's seat, reached down on the other side of the car, and got out of the car holding his left hand in his jacket. Defendant returned to the back door and made a motion as if trying to knock the door open with his shoulder. Seconds later, the witness heard a shot, ran outside, and saw the child Michelle run out of her house and over to his house. She said: "My daddy is beating up my momma."

Mr. Russell then locked his back door, heard another shot, and saw the defendant come out of the house and get in his car. Russell took Michelle back to her house, where he saw her mother lying in the basement, gasping for air. The witness then called the police and took the girl to her grandmother's house.

Benny Radford, the policeman who was dispatched to the scene of the shooting, testified that he arrived about 10:16 a.m. and saw a woman lying

on the floor in the basement at the bottom of the steps. The rear door had been forced open. Immediately after finding the body, Patrolman Radford contacted Michelle and asked her what happened. She said her daddy had shot her mother. Radford stated that he was the only one who spoke to the child immediately after the shooting, and that the child appeared "dazed."

Other evidence revealed that defendant had worked at the same job for more than two years prior to that date, but he did not appear for work on the day of the shooting or thereafter. The police were unable to locate or apprehend defendant until the following week, when defendant's lawyer surrendered him.

Further evidence revealed that the deceased had filed a petition for dissolution of her marriage to the defendant on grounds of physical cruelty, and asked for property and support. A petition for injunction was also filed, asking that defendant be restrained from threatening, harassing or striking his wife. The testimony also revealed that Janet Cherry had a boyfriend named Curtis Mild. A witness testified that he saw the two together on the day of the homicide between 7 and 8 a.m., about two blocks from the scene of the homicide. Sometime later, the same witness testified that he saw Curtis Mild run past the same spot, crying and stating, "He shot her." On rebuttal, the deceased's sister testified that Curtis Mild was not seen in the area of the homicide until police investigation was under way.

Defendant filed a motion *in limine* to exclude the testimony of his minor daughter, who was four years, 11 months old at the time of the offense. At the hearing on the motion, Michelle explained what happened:

> "My mama was downstairs in the basement, and I was in the kitchen eating, and then mama went oh me, and he busted the door open, then I ran over to their house, and then took me out with her and then when the police came, the police asked me a little questions."

When asked where she was in the house at the time her father broke in the door, she stated that she was downstairs in the basement, eating. When asked what she heard when her father broke in the door, she replied that she heard him shoot twice. She stated that she ran to "Gazelle's" house because she was scared. When defense counsel asked her where she was at the time her father came to the house, Michelle replied that she was downstairs with her mother. She said she knew it was her father who came to her house, because her mother had told her who it was. She responded affirmatively when again asked if she was downstairs when she heard the two shots. The court found her incompetent to testify because she could not recollect and narrate what she recollected in a satisfactory manner. Defense counsel then moved to exclude any statements made by Michelle to a third party in light of the ruling that she was not a competent witness. This motion was denied.

Defendant's first contention is that the trial court erred in permitting

Gazelle Russell and Patrolman Radford to testify regarding the statements Michelle Cherry made to them. Russell testified that as she ran from the house immediately after the shooting, she told him, "My daddy is beating up my momma." Radford testified that she told him "her daddy had shot her mother" when he arrived at her grandmother's house about 15 minutes after the shooting. The State contends that these statements were properly admitted under the "spontaneous declarations" exception to the hearsay rule.

■■ Defendant argues that these statements were inadmissible at trial because Michelle was found incompetent to testify because of her age. He asserts that her age makes her statements unreliable, even if they would otherwise have been admissible as spontaneous declarations. However, in *People v. Miller* (1978), 58 Ill. App. 3d 156, 373 N.E.2d 1077, the appellate court concluded that the declarations of a four-year-old child were admissible even though the child was held incompetent to testify, since the statements otherwise qualified as spontaneous declarations. The reliability, and therefore admissibility, of a spontaneous declaration comes not from the reliability of the declarant, but from the circumstances under which the statement is made. The holding in *Miller* is in accord with the law in a majority of States as well. (See generally 25 Am. Jur. 2d *Evidence* §728 (1967); Annot., 83 A.L.R.2d 1368 (1962).) Therefore the testimony regarding Michelle Cherry's declarations was not inadmissible simply on the basis of her incompetence to testify at trial.

■■ Defendant also contends that testimony regarding Michelle's declarations should have been excluded because the State failed to prove that she actually saw the homicide. However, the supreme court has held such direct proof is not necessary:

> "We do not understand the requirement to be that the party seeking to have the declaration admitted must prove by direct evidence beyond any possibility of speculation that the declarant personally observed the matters. If such were the rule, there would hardly ever be a case in which a declaration would be admissible. Rather, we think it is sufficient if it appears inferentially that the declarant personally observed such matters and that there is nothing to make a contrary inference more probable." *People v. Poland* (1961), 22 Ill. 2d 175, 183, 174 N.E.2d 804, 808.

According to defendant, all the State demonstrated was that Michelle was in the house when the confrontation occurred. However, we believe the evidence before the trial court was sufficient to justify the inference that Michelle saw much of what took place. Gazelle Russell testified that it was only a second or so after he heard the shot that he saw the little girl run out the rear door. While Michelle was at first in the kitchen eating, she repeatedly stated at the competency hearing that she was in the basement

when defendant broke the door in and when the shots were fired. Subsequently, the body of the child's mother was discovered on the floor of the basement. Moreover, according to Patrolman Radford, the stairs leading from the basement were directly off the rear door, from which Michelle fled. These facts make clear the inference that Michelle witnessed the homicide, and there is no contrary inference more probable.

Having concluded that Michelle's declarations were not rendered inadmissible by either her age or her opportunity to witness the homicide, we must determine whether her statements meet the other requirements of spontaneous declarations. The doctrine was explained in *Poland*, 22 Ill. 2d 175, 180-81, 174 N.E.2d 804, 806-07:

> "There has emerged, as a recognized exception to the hearsay rule, the principle that, under certain conditions, what have been variously characterized as 'spontaneous declarations' or 'excited utterances' are properly admissible as an exception to the hearsay rule. * * *
> * * *
> The rule has been succinctly stated by the Supreme Court of California: 'When a declaration is made under the immediate influence of the occurrence to which it relates and so near in time as to negative any probability of fabrication, said declaration is admissible.' [Citation.]
> Three factors are necessary to bring a statement within this exception to the hearsay rule: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence. * * * The declaration need not have been made by a participant, but may be that of a bystander. Nor does the fact that the statement did not coincide exactly in time and place with the event control. The pertinent point is whether there was a lack of sufficient time to allow an opportunity for reflection and invention." 22 Ill. 2d 175, 180-81, 174 N.E.2d 804, 806-07.

■■■ Whether the circumstances under which a declaration was made are such as to make it probable that it was spontaneous presents a preliminary question for the determination of the trial court, which is clothed with a reasonable degree of latitude in his ruling. (*People v. Kilgore* (1976), 39 Ill. App. 3d 1000, 1005, 350 N.E.2d 810, 814.) The trial court generally will be held to have abused his discretion only if the statements are not so intimately connected with the event as to indicate a lack of premeditation. (*People v. Wilson* (1976), 44 Ill. App. 3d 15, 17, 357 N.E.2d 842, 844.) The time which elapsed between the occurrence and the declaration, and the distance which the declarant traveled from the scene before making the declaration, are both material in determining spontaneity. However,

neither factor is controlling. The court must consider the surrounding circumstances to determine whether it is reasonable to believe that the declarant acted without thought, or whether there existed the possibility that the declarant had deliberated in making a false statement. (*People v. Parisie* (1972), 5 Ill. App. 3d 1009, 1028, 287 N.E.2d 310, 321.) The court in *Parisie* quoted from *State v. Stafford* (1946), 237 Iowa 780, 23 N.W.2d 832 (which permitted testimony regarding a statement made 14 hours after the startling occurrence), the following factors to be considered where the time lapse between occurrence and declaration is an issue:

> "* * * the length of time; whether the time is or is not definitely stated; the place of the act or statement; the condition of the declarant; the influence of intervening occurrences; and the nature and circumstances of the statement * * * but the real test is not whether the declarations are in point of fact contemporaneous, but whether the circumstances exclude premeditation and design * * *. The facts and circumstances of no two cases can be precisely alike, and the exact length of time is not mathematically controlling." *Parisie*, 5 Ill. App. 1009, 1030, 287 N.E.2d 310, 322.

When these principles are applied to the first statement made by Michelle Cherry, we find it was clearly a spontaneous declaration. Only a second or two after a shot or shots were fired, Gazelle Russell saw Michelle bolt from the back door and come running across the vacant lot toward his house. As soon as she reached him, she said, "My daddy is beating up my momma." The occurrence was sufficiently startling, there was absolutely no time to fabricate, and the statement was related to the circumstances of the occurrence; we think it was trustworthy and probative of defendant's guilt. Admission of testimony regarding the declaration was therefore proper.

The circumstances surrounding the second statement present a more difficult question. After Michelle ran to Gazelle Russell's house, Russell locked the back door, heard another shot, and saw defendant get into his car and drive away. Russell took the girl back to her house, where they both apparently saw Janet Cherry lying in the basement, gasping for air. With Michelle still alongside, Russell called the police, then took the girl to her grandmother's house. Fifteen or 20 minutes later, Patrolman Benny Radford arrived at the grandmother's house and asked Michelle what happened. She replied that her daddy had shot her mother. In support of the statement's spontaneity is the fact that the child's mother had just been shot and mortally wounded. This was unquestionably a startling occurrence resulting in shock which could have continued for a period much longer than 15 minutes. Furthermore, her statement to police was made at the first opportunity and not as the result of protracted questioning. It is well established that asking the declarant "what happened" is insufficient to

destroy the spontaneity of a response. (*People v. Damen* (1963), 28 Ill. 2d 464, 469, 193 N.E.2d 25; 30; *People v. Leyva* (1977), 47 Ill. App. 3d 53, 55-56, 361 N.E.2d 763, 765.) Moreover, because of Michelle's age, 4 years, 11 months, it is less likely that her powers of deliberate reasoning had returned during the interim. Similarly, because of her age, she had no reason to lie. Her tender years militate strongly against any such claim. There also is evidence that Michelle remained shocked by the occurrence, since Patrolman Radford said she appeared "dazed." The trial court is vested with considerable discretion in admitting testimony within the spontaneous declaration exception (see 6 Wigmore, Evidence §1750 (Chadbourne rev. 1976)), and the facts of the instant case lead us to conclude that the court did not abuse its discretion in admitting testimony regarding the second statement. (*Thomas v. Goodman* (1977), 52 Ill. App. 3d 774, 780-81, 365 N.E.2d 1314, 1319.) Furthermore, in light of all the other evidence of defendant's guilt and the fact that Michelle's earlier, similar statement had been properly admitted, her statement to Radford was merely cumulative, and any error was harmless beyond a reasonable doubt. *People v. Vinson* (1977), 49 Ill. App. 3d 602, 607, 364 N.E.2d 364, 367.

■■■ We find no grounds for reversal in defendant's other contentions of error. He argues that the court erred in admitting evidence of a pending divorce between defendant and the victim. During an *in camera* hearing on this objection, defense counsel conceded that evidence of a pending divorce might be proper, but argued that the grounds and the requested relief were irrelevant. The court overruled the objection and permitted the deceased's attorney to testify—for the limited purpose of showing motive for the homicide—that the suit was based on physical cruelty, and that the wife requested the house, custody of the children, and an injunction to prevent his entering the house and threatening or striking her. This testimony was clearly proper. While motive is not an element of the crime of murder, it is always proper to show the presence of a motive which could lead the accused to commit the act charged. (*People v. Branion* (1970), 47 Ill. 2d 70, 265 N.E.2d 1, *cert. denied* (1971), 403 U.S. 907, 29 L. Ed. 2d 683, 91 S. Ct. 2213; *People v. Davis* (1952), 412 Ill. 391, 401, 107 N.E.2d 607, 612.) The accusations and requests contained in the divorce complaint did provide a possible motive for the homicide. Furthermore, the attorney's testimony regarding the grounds for divorce did not constitute hearsay, as defendant contends, because it was not offered for the truth of the matter asserted, but merely to show the accusations which the deceased had made against defendant. (See *People v. Carpenter* (1963), 28 Ill. 2d 116, 120, 190 N.E.2d 738, 741.) The fact that the trial court did not instruct the jury of the limited purpose for which this evidence was admitted was harmless, since evidence of the divorce proved nothing other than motive, and the other evidence of defendant's guilt was overwhelming.

■■ Defendant also argues that the court erred in sustaining the prosecutor's objection to certain statements in closing argument. Counsel argued that Michelle Cherry might have been in another room when the homicide took place and have believed it was defendant who attacked her mother, when in fact it was Curtis Mild, the deceased's boyfriend. While counsel is entitled to comment upon facts and circumstances proved or on legitimate inferences therefrom (*People v. Oliger* (1975), 32 Ill. App. 3d 889, 892-93, 336 N.E.2d 769, 772), these comments were not based on evidence adduced at trial. There was no indication that Curtis Mild was at or near the house at the time of the homicide. Furthermore, defense counsel had been permitted to argue at length his theory that the victim was killed by Mild. We believe that the prohibition of further remarks in this vein, if error, was harmless beyond a reasonable doubt, since it could not have affected the verdict in light of the evidence against defendant.

Defendant's final argument is that the court erred in refusing the following tendered jury instruction:

> "Michelle Cherry, the daughter of the decedent, was declared by this Court not to be a competent witness to testify at trial. That you are allowed to take this into consideration in evaluating the weight of any declarations made by her to any witnesses who testified at trial."

In refusing to submit this instruction, the court stated that it was not a pattern instruction, and the fact that the witness had been declared incompetent was not a matter of which the jury should be apprised.

As we have noted, the competency of the declarant is not a criterion for admissibility of a statement as a spontaneous declaration. (See *Poland*, 22 Ill. 2d 175, 181, 174 N.E.2d 804, 807.) As found in *People v. Miller* (1978), 58 Ill. App. 3d 156, 373 N.E.2d 1077, so long as a statement qualifies as a spontaneous declaration, it is reliable and admissible regardless of the competency of the declarant, since the reliability of the statement comes from the circumstances under which the statement was made. We find that defendant's tendered instruction inaccurately stated the law, and was properly refused by the trial court. Ill. Rev. Stat. 1977, ch. 110A, par. 451(a).

For the foregoing reasons, the conviction of defendant is hereby affirmed.

Affirmed.

JONES, P. J., and KARNS, J., concur.