THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MACK HARRIS, Defendant-Appellant.

First District (4th Division)   No. 84—601

Opinion filed June 27, 1985.

Steven Clark and Jeffrey Walker, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Mary Ellen Dienes, and Mary Pat Butler, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

After a bench trial, the defendant, Mack Harris, was found guilty of three counts of rape and one count of unlawful restraint. The trial judge merged the unlawful restraint into the three counts of rape and sentenced the defendant to seven years for each count of rape, with each sentence to run concurrently. On appeal, the defendant contends that the trial court erred in admitting evidence of a spontaneous declaration and of a prompt complaint of rape. He also contends that he was not proved guilty beyond a reasonable doubt and that two of the rape charges should be vacated and the case remanded for resentencing.

The complainant, a 16-year-old, testified that on August 14, 1983,

at about 8:30 p.m., she received a phone call from the defendant asking her to babysit for him and the complainant's aunt, the defendant's girlfriend, while they went to a party. She agreed. The complainant and her seven-year-old brother, Willie, then left their house, planning to spend the night at her aunt's apartment and return the next morning.

When she and Willie arrived at her aunt's apartment, the defendant was the only one home. The defendant informed her that her aunt and her cousin were at the store. At that point, the complainant and Willie sat in the front room listening to the radio while the defendant sat watching television and drinking gin. The complainant also periodically looked out the kitchen window for her aunt. All three sat in the front room until 10 p.m., at which point the complainant again looked out the kitchen window for her aunt. Willie then came into the kitchen and said that they had to go to bed. The complainant refused. The defendant then came into the kitchen and told them that they had to go to bed. She again refused. The defendant then repeated his order, at which point the complainant began to cry. The defendant then began to choke the complainant and she started screaming.

The defendant then ordered the complainant and her brother to leave. As they attempted to leave, the defendant grabbed the complainant and threw her into a chair. He then choked her again. The defendant then pushed her into the bedroom and in an angry voice told her to take off her clothes. Next, the defendant took off his clothes and began to touch her breasts. The defendant then had sexual intercourse with the complainant. Afterwards, the defendant left the bedroom for 10 minutes. When he returned they had sexual intercourse again. She and the defendant then fell asleep for about three hours. The defendant then awakened the complainant and had sexual intercourse with her for a third time. They fell asleep again until morning. The defendant tried to have sexual intercourse with her in the morning but failed. The complainant then put on her clothes and prepared to leave. The defendant then asked her if she was coming back and if she was going to tell anyone what had happened. She responded that she would be back and that she would not tell anyone what happened. She and Willie then left.

When she returned home, the complainant told her mother that the defendant did not want her to babysit. Her mother then asked her what he wanted her to do. She asked the complainant further whether the defendant had raped her, to which the complainant replied, "What else would he want." Her mother then called the police.

The complainant's mother corroborated her daughter's testimony.

The mother stated that on Sunday, August 14, 1983, the defendant had called her house to ask if the complainant could babysit while he and the complainant's aunt went to a party. She verified that her daughter and her son Willie left for the defendant's apartment and planned to spend the night there, as they had done on previous nights on which the complainant had babysat for them. The mother further testified that when the complainant returned home the next morning, she was mad and said that she wished she had not gone to the defendant's apartment and that the defendant did not want a babysitter. The mother then asked why she said that and also if the defendant did something to her "like rape her or something." The complainant asked what her mother had just said, wherein the mother repeated her question whether the defendant had raped her to which the complainant replied, yes.

The State also called the defendant's girlfriend, who was also the complainant's aunt. She testified that on Sunday, August 14, 1983, at about 3 p.m., she and the defendant had a fight. She stated that she left the apartment with her daughter and that she had no intention of returning to the apartment. The following day she received a phone call from the complainant's mother regarding the alleged rape. At 1:30 p.m., on August 15, 1983, she met with police officers and accompanied them to the defendant's apartment. It was at this point that the police arrested the defendant.

Dean Morask, assistant State's Attorney to the felony review unit, testified that he arrived at Area 4 Headquarters, where the defendant was being detained, and upon his arrival spoke to Detective Nuccio and the complainant. He then went into the interview room with Nuccio to speak with the defendant. Morask identified himself to the defendant and advised the defendant of his *Miranda* rights. They proceeded to have a conversation regarding the alleged rape. Morask then reduced the conversation to writing.

According to Morask the defendant stated that on the date in question the defendant telephoned the complainant and asked her to babysit. She and Willie arrive at 9 p.m. The defendant watched television as the youngsters listened to the radio. The defendant at that time was drunk on gin. While Willie lay on the bed in the kitchen, the defendant told the complainant to go into the bedroom. She refused. The defendant then choked her and told her to shut up. They then went into the bedroom and the defendant ordered the complainant to take off her clothes. The defendant then took off his clothes and made her lay on the bed. The defendant and the complainant then had sexual intercourse three times during the night. She was scared of the

defendant and did not want to have sex with him. They awoke at 10 a.m., but before she left the defendant asked her if she was going to tell anyone what happened and she responded no. The defendant was drunk and sorry for what happened.

The defendant signed this statement, acknowledging that he had read, was informed of, and understood his *Miranda* rights. Morask stated that the defendant read aloud the two lines containing *Miranda* and then affixed his initials beneath them. Morask also testified that he told the defendant to read the statement to himself and that afterward, he read the statement aloud to the defendant. Morask stated that the defendant affixed his initials over a word he crossed out and that he, Nuccio and the defendant all placed their signatures beneath the statement. This statement was admitted into evidence at trial.

It was then stipulated to at trial that the complainant underwent several vaginal tests at Mount Sinai Hospital and that those lab tests proved positive for semen.

The defendant then testified in his own behalf. He stated that he and his girlfriend got into a fight and that she and her daughter left that afternoon, although he thought they would return. He admitted calling the complainant and asking her to come over and babysit. He further stated that about 10 p.m. the complainant was sitting on the couch looking out the window and Willie was sitting on the bed in the kitchen playing with toys. Later, while the defendant and the complainant were sitting around watching television, they began discussing the kind of guys she likes. The conversation then progressed to the point that they discussed each other, when the defendant then said, "Why not me and you?" to which the complainant replied, "Why not."

At this point, the complainant went into the bedroom. The defendant came in five minutes later. He asked her to take off her clothes and lay down and then he took off his clothes and laid in bed with her. They then had sexual intercourse three times during the night. The defendant testified that he never forced her to have sexual intercourse with him and that he never choked her. He did admit to asking her if she was going to tell anyone what happened and that he had been drinking that night.

The defendant also testified with regard to his statement. He indicated that he did sign the statement but he never put his initials on the statement nor crossed out any words. He stated that he read the statement and that it was then read aloud. He further stated that he never choked her or told her to shut up.

On rebuttal, the State attempted to call Willie, the complainant's seven-year-old brother to the stand. After argument, the trial court found Willie not competent to testify. Thereafter, the complainant's mother was recalled by the State as a rebuttal witness. She testified that at about 9 p.m. on August 15, 1983, she had a conversation with Willie in her bedroom. Defense counsel then objected on the grounds of hearsay. The State responded that Willie's statement was a spontaneous declaration. The trial court reserved its ruling and heard the mother's testimony.

She testified that on August 15, 1983, she and the complainant left her house at about 2 p.m. and did not return until 9 p.m. She stated that no police were at the house after 2 p.m. She further stated that Willie was at home with his father, sister and brother and that only his father and a sibling knew that the complainant had been raped by the defendant. When she returned at 9 p.m. it was the first time she spoke to Willie all day. Upon being asked what Willie told her, defense counsel again objected claiming that the statement lacked spontaneity. The trial court overruled the objection. She then testified that Willie told her that at the time he was in the kitchen, he saw the defendant try to make his sister go into the other room. She also stated that Willie said that because his sister did not want to go to the other room, the defendant choked her.

The final rebuttal witness for the State was Detective Philip Nuccio. He testified that he spoke to the defendant three times on August 15, 1983, regarding the alleged rape. After advising the defendant of his *Miranda* rights, Nuccio stated that the defendant admitted arguing with his girlfriend, asking the complainant to babysit and having sexual intercourse with her. Nuccio then left the interview room to speak to the complainant. Upon his return, he stated that he confronted the defendant with discrepancies between the defendant's and the complainant's stories. At that point, Nuccio stated that the defendant began to change his story and said that the complainant did not come into the bedroom willingly. This conversation was not included in Nuccio's case report. Thereafter, the trial court found the defendant guilty of all three counts of rape and one count of unlawful restraint.

The defendant contends that the trial court denied him his sixth amendment right to confront the witnesses against him by admitting the rebuttal testimony of the complainant's mother regarding a statement her son Willie made to her. The defendant argues that Willie's statement to his mother is hearsay and does not qualify under the spontaneous declaration exception to the hearsay rule and therefore

should have been excluded. The defendant further argues the admission of Willie's statement is extremely harmful to his defense because the issue before the court was whether the defendant's acts of intercourse with the complainant were consensual, and Willie's statement bolsters her credibility while destroying the defendant's regarding the issue of choking. Thus, the defendant maintains that by violating his sixth amendment rights, the trial court committed reversible error.

A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition is admissible as a hearsay exception. (See Cleary and Graham, Handbook of Illinois Evidence sec. 803.3 (4th ed. 1984).) The exception is premised on the notion that excitement caused by the event or condition temporarily stills the capacity for reflection, thus producing statements free of conscious fabrication. (*People v. Pointer* (1981), 93 Ill. App. 3d 1064, 418 N.E.2d 1.) The requirements for admissibility under this exception are: (1) the occurrence of an event or condition sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement relating to the circumstances of the occurrence. (*People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164.) Moreover, the spontaneous declaration of a witness found by the trial court to be incompetent to testify is nevertheless admissible. *People v. Cherry* (1980), 88 Ill. App. 3d 1048, 411 N.E.2d 61.

Whether a statement was sufficiently spontaneous to qualify for admission and evidence under this exception to the hearsay rule is a preliminary question for determination by the trial court. (*People v. Lang* (1982), 106 Ill. App. 3d 808, 436 N.E.2d 260.) The court's ruling will be held an abuse of discretion only if the statements are not so intimately connected with the event as to indicate a lack of premeditation. (*People v. Cherry* (1980), 88 Ill. App. 3d 1048, 411 N.E.2d 61.) In deciding whether the declarant acted without thought, the court is required to consider all the circumstances surrounding the making of the statement. (See *People v. Grover* (1983), 116 Ill. App. 3d 116, 451 N.E.2d 587.) The time which elapsed between the occurrence and the declaration and the distance which the declarant travelled from the scene before making the declaration are both material in determining spontaneity. However, neither factor is controlling. (*People v. Cherry* (1980), 88 Ill. App. 3d 1048, 1054, 411 N.E.2d 61.) Also, the fact that the statement was made in response to a question will not itself deprive an utterance of the requisite spontaneity to establish its admissibility. Thus, statements made in response to general inquiries as to what has occurred may nevertheless be spontaneous. *People v. Miller*

(1978), 58 Ill. App. 3d 156, 373 N.E.2d 1077.

■■ In the instant case, all the circumstances surrounding Willie's statement lead this court to the conclusion that his statement was not a spontaneous declaration. Willie made his declaration nearly 23 hours after the alleged startling event, the defendant's choking of the complainant. The declaration was made in response to direct questions posed by Willie's mother. While neither of the above factors are controlling, together they raise serious questions as to the spontaneity involved in the declaration. Another critical consideration is the fact that the State failed to present any observable manifestations that would demonstrate that Willie's declaration was made while he was still under the stress of the startling event. (See *People v. Van Scyoc* (1982), 108 Ill. App. 3d 339, 439 N.E.2d 95.) Willie was home for some 12 hours prior to his declaration. Within that time span, Willie was exposed to his mother, father, two sisters, a brother and the police. Furthermore, there is no testimony regarding any visible signs of distress or anxiety displayed by Willie during the day or during the actual declaration. As mentioned above, although a spontaneous declaration need not take place contemporaneously with the incident in question, the circumstances must exclude the real possibility of premeditation and design. (*People v. Parisie* (1972), 5 Ill. App. 3d 1009, 287 N.E.2d 310.) The circumstances in the case at bar do not exclude premeditation and design. Accordingly, the trial court erred in admitting into evidence as a spontaneous declaration Willie's statement regarding whether the defendant choked the complainant.

■ As was argued by the defendant, Willie's statement is a critical link leading to the defendant's conviction. The heart of the instant case is the issue of consent. The defendant contends that the complainant consented to the acts of intercourse while she maintains that the defendant physically forced her to comply. She testified that this force was applied in the form of the defendant choking her. Thus, because in this case the evidence is close and does not present a clear decision either way, the credibility of the two witnesses proves to be significant. In the instant case, the improper admission of Willie's statement serves to corroborate the complainant's testimony to the extreme detriment of the defendant. Here, the defendant is denied the opportunity to cross-examine the out-of-court declarant, the most objectionable feature of hearsay testimony. Furthermore, even though the defendant's statement to the police was introduced, we do not believe that the State presented substantial corroborative evidence in addition to the hearsay testimony to render the error in admitting Willie's statement harmless. (See *People v. Robinson* (1978), 73 Ill. 2d

192, 383 N.E.2d 164.) Therefore, we find that the trial court committed reversible error, and we remand this cause for a new trial.

■■ The defendant also contends that the complainant's hearsay statement to her mother upon her return from the defendant's apartment was improperly admitted. The defendant argues that this statement does not fit into either the spontaneous declaration or the prompt-complaint-of-rape exception to the hearsay rule and accordingly should not be admitted. While the State is correct in noting that the defendant waived this issue by failing to object to the inclusion of this statement at trial and failing to include the issue in his motion for a new trial, we believe that it still merits discussion since this cause is remanded for a new trial and the likelihood of this issue arising again is strong.

In Illinois, the general rule is that the testimony of a witness cannot be bolstered or supported by showing that a witness has made similar statements out-of-court in harmony with his testimony on the witness stand. (*People v. Pointer* (1981), 93 Ill. App. 3d 1064, 418 N.E.2d 1.) Exceptions to this rule have been made where the declarant makes a spontaneous declaration (*People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164) and in rape cases where a prompt complaint of rape is made. *People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25.

The law regarding spontaneous declarations, as was previously stated, equally applies to the instant issue. The complainant's statement to her mother regarding whether she was raped does not qualify under that law as a spontaneous declaration. The record indicates that the complainant awoke at the defendant's apartment, dressed, engaged in a brief conversation with the defendant, left the apartment with her brother Willie and walked home. After returning home and upon inquiries from her mother, she commented that the defendant had raped her. These circumstances did not exclude premeditation and design. The record does not reveal that the complainant exhibited any sign of stress or excitement when she responded to her mother's questions. However, the record does reveal that she had ample time within which to collect her thoughts and reflect on the situation. It appears that the complainant was calm when making her statement and was not speaking as a result of a startling event. Therefore, we do not believe that her statement was a spontaneous declaration.

■■ We also do not believe that the complainant's statement was a prompt complaint of rape. In rape cases, the fact that the prosecuting witness made a complaint of the offense is admissible on direct examination to corroborate her testimony. The evidence is permitted on the

basis that it is entirely natural that the victim of a forcible rape would speak out regarding it. (*People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25; see also Cleary & Graham, Handbook of Illinois Evidence sec. 611.15 (4th ed. 1984).) While there is no fixed time with which the complaint must be made, it must be made without inconsistent or unexplained delay. (*People v. Davis* (1957), 10 Ill. 2d 430, 140 N.E.2d 675, *cert. denied* (1957), 355 U.S. 820, 2 L. Ed. 2d 35, 78 S. Ct. 25; *People v. Fuelner* (1982), 104 Ill. App. 3d 340, 432 N.E.2d 986; *People v. Robinson* (1981), 94 Ill. App. 3d 304, 418 N.E.2d 899.) However, the complaint must be voluntary and spontaneous and thus not made as a result of a series of questions. *People v. Taylor* (1971), 48 Ill. 2d 91, 268 N.E.2d 865.

In *People v. Taylor*, a 16-year-old complainant walked to a fire station and asked the fireman if she could use the phone. The fireman asked her if anything was wrong, to which she responded she wanted to call her father. It was only after she had gone to the telephone and the fireman continued his questioning that she told him that she had been raped. The court held complainant's statement inadmissible and opined that had the question not been asked, her statement would not have been made. Moreover, in cases where delays in the complaint were not viewed as inconsistent or unexplained, the court concluded that the common thread which bound these diverse fact patterns was that during the delay the complainants were incoherent, fearful, hysterical and/or emotional. *People v. Slavin* (1978), 66 Ill. App. 3d 525, 383 N.E.2d 1303.

In the instant case, the complainant returned home in an apparent calm condition. When she entered her house, all she said to her mother was that the defendant did not want her to come and babysit. The mother then posed several questions, asking whether the defendant had raped her. She finally answered, "What else would he want." We believe that the facts here are most similar to the facts in *Taylor*. As was noted in *Taylor*, had the question not been asked by the fireman, the statement of rape would not have been made. Such is the case in the instant matter. Had the complainant's mother not posed several questions to the complainant her reply would not have been forthcoming. Accordingly, the complainant's statement to her mother regarding the rape should not have been admitted.

The defendant further contends that he was not proved guilty beyond a reasonable doubt. In the instant bench trial, if properly considered, the court had before it in the testimony of the complainant sufficient evidence to sustain a finding of guilt. We will not dis-

turb the trial court's finding. *People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.

■ Next, the defendant contends that the second and third charges of rape should be vacated and the cause remanded for resentencing because the latter two rape charges arose from the same course of conduct as the first charge.

A defendant may not be convicted of multiple offenses which arise from a single act or course of conduct. However, where more than one offense arises from a series of incidental or closely related acts and the offenses are not lesser-included offenses, convictions with concurrent sentences can be entered. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) In the instant case, it is clear that the three individual acts of penetration took place at three distinct times. The State cites a series of cases that find that similar or identical acts of violence against a single individual taking place contemporaneously still do not arise in the same course of conduct. (See *People v. Dixon* (1982), 91 Ill. 2d 346, 438 N.E.2d 180; *People v. Myers* (1981), 85 Ill. 2d 281, 426 N.E.2d 535; *People v. Mays* (1980), 81 Ill. App. 3d 1090, 401 N.E.2d 1159.) Therefore, the defendant's three convictions for rape are not vacated.

With regard to resentencing, the defendant argues that his sentence should be vacated and remanded for resentencing in view of the statutory change with respect to criminal sexual conduct. In light of our determination that the instant matter is to be remanded for a new trial, any consideration of sentencing at this time would be premature.

Therefore, based on the foregoing the instant case is reversed and remanded.

Reversed and remanded.

JOHNSON and LINN, JJ., concur.