THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RANDALL D. WHITE, Defendant-Appellant.

Fourth District   No. 4—88—0954

Opinion filed June 15, 1990.

McCULLOUGH, J., specially concurring.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and J.A.C. Knuppel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

After a jury trial, defendant, Randall White, was convicted of aggravated criminal sexual assault, residential burglary, and unlawful restraint (Ill. Rev. Stat. 1987, ch. 38, pars. 12—14, 19—3, 10—3). On appeal, defendant contends that the admission of testimony containing certain out-of-court statements by the alleged victim was error. Defendant also argues that if his convictions are affirmed, the case should be remanded for resentencing because the trial court permitted the State to present inadmissible evidence regarding defendant's alleged criminal behavior as a factor in aggravation.

We affirm.

The four-year-old alleged victim, S.G., did not testify at trial. Instead, five witnesses were permitted by the court to testify as to statements made to them by S.G. Those witnesses were Tony DeVore, S.G.'s baby-sitter; Tammy Grigsby, S.G.'s mother; police officer Terry Lewis; Nurse Cheryl Reents; and Dr. Michael Meinzen. The testimony of each of these witnesses will be discussed in detail, as will the circumstances under which S.G. spoke to each witness.

The events relevant to the offenses charged occurred on April 16,

1988, at 4 a.m. in the home of S.G., while Tony DeVore was baby-sitting for S.G. and S.G.'s three-year-old brother, Eric. DeVore, who was 14, was awakened by S.G.'s scream, went to the victim's bedroom, and saw the defendant exit that room and then the residence.

At trial, DeVore testified that she asked S.G. what happened, and S.G. told her. Defense counsel's objection to DeVore's testifying as to what S.G. told her was overruled on the ground that S.G.'s statements were spontaneous declarations and therefore admissible as an exception to the rule against hearsay. DeVore's testimony continued as follows:

"Q. [By prosecutor:] Okay. What did [S.G.] say at that point?

A. When I went in there she said he put his hand over her mouth. He'd been choking her. And she told me that he was touching her in the wrong places and he also said that if she screamed then he would whip her and then call me up there to whip her.

Q. Okay. Now, as best you recall what did [S.G.] say he or did she identify the person or what?

A. She said—well, first she said his name, Randy.

Q. Okay.

A. And then she went on with he.

Q. Okay. Start off with Randy?

A. Yeah.

Q. Okay. Now, you said—you testified that she said he touched her in wrong places. How did she phrase that as best you recall?

A. She said—she said, 'He was touching me.' And when I asked where she point [sic] to her private places.

Q. Okay. And [I] ask you could you describe where she pointed?

A. To the lower part of her body.

Q. Okay. And—[.]

[The defendant's continuing hearsay objection was overruled.]

Q. Do you know the name for the portion of the anatomy for what you talked about?

A. Yes, I do.

Q. What was she pointing to?

A. The vaginal area."

DeVore testified that after she tried to comfort S.G., "she finally calmed down and she quit crying a little bit."

According to DeVore, Tammy Grigsby, the victim's mother, arrived home approximately 30 minutes after the incident. DeVore

spoke very briefly to Grigsby, who then sat with S.G. and asked her exactly what happened. Defense counsel's objection to Grigsby's testifying about what S.G. told her was overruled for the same reason that the objection as to DeVore's testimony was overruled. Grigsby testified that S.G.'s response to her question was as follows:

"A. She said she woke up and that Randy was in the room. And that he had put his hand on her mouth and told her that if she screamed that he would, you know, whip her, and Tony [DeVore] would whip her too. And then she said that he put his mouth on her front part.

\* \* \*

Q. [By prosecutor:] And did you clarify what she meant by that?

A. What do you mean? I—yeah, I asked her exactly, you know, what he did. And she told me that he had pulled her pants down a little bit and put his mouth down there and—."

Grigsby described her daughter as appearing scared and a "little hyper." Grigsby testified that she noticed "bruises or red marks" on S.G.'s neck that were not present when Grigsby left the residence earlier that evening.

Immediately after this short conversation with her daughter, Grigsby called the police. She testified that Officer Terry Lewis of the Georgetown police department arrived "just a few minutes" after she called. Lewis testified that he arrived at S.G.'s home around 4:47 a.m. He asked to speak to S.G. privately, and Grigsby had no objection. Grigsby testified that at the suggestion of Officer Lewis, she checked S.G.'s "front part" (the term Grigsby said S.G. uses for this part of her body), and Grigsby noticed that it was a "little red."

Lewis questioned S.G. by herself in the kitchen. He first spoke with S.G. about cartoons in order to "[get] her at ease." At first she seemed upset and nervous, although she was very cooperative. The officer's testimony as to what the victim told him was essentially identical to the testimony given by DeVore and Grigsby, with the addition of the following:

"A. She went on and she started talking about her pants being wet.

Q. [By prosecutor:] Okay.

A. And when I referred to them as pants she advised me they were not pants they are underwear. And that they were wet. I asked if she had peed in her pants and she got disgusted with me and said, 'I don't pee in my pants, my underwear' she said.

Q. Uh-huh.

A. And she said Randy done it. So I asked her then I said how did Randy make them wet. And she told me that he had pulled her pants to one side and used his tongue on her private parts, what she called her private parts."

Defendant objected to all of Lewis' testimony about what S.G. had told him, but the court overruled that objection, indicating that this testimony was also being admitted as a spontaneous declaration.

Lewis also testified that he noticed a "small cluster of scratches" on the right side of S.G.'s mouth. They appeared to be "very fresh cuts." He said S.G. also had two long, parallel, fresh scratches on the left side of her neck. She told Lewis that "Randy" had done that to her when he had his hand on her. Lewis took a color Polaroid photograph of S.G. around 6 a.m. Lewis testified that the photograph showed the scratches he testified about. The photograph was admitted into evidence.

Cheryl Reents testified that she was working as an emergency room nurse when she interviewed S.G. shortly after 8 a.m. that same morning, April 16, 1988. Reents testified that she asked questions of S.G. in order to obtain a history to assist herself and the attending emergency room physician in making a diagnosis and providing treatment. When the State asked Reents what S.G. told her after Reents asked S.G. what happened, defense counsel again objected. In response, the State argued that S.G.'s statements to Reents were admissible both as spontaneous declarations as well as statements made for medical purposes under section 115—13 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 115—13). The court overruled the objection, and Reents testified that S.G. told her, *inter alia,* the following:

"A. Okay. Then I asked if he touched her anywhere else [besides her mouth and neck]. And she said yes. And I asked her where. And she said, 'On my front part.' And then for clarification I asked her to point where. And the patient pointed to the mons area.

Q. [By prosecutor:] Okay. And that's what?

A. That's the genital, the labia majora and the surrounding tissue in the genital area.

Q. On the female?

A. Yes, on the female. Okay. And I—then I, for more clarification, I asked her what he touched her with. And she stated his mouth. And then I asked her if he touched her with anything else. She said no. Then I asked her if he touched her with

his front part and she stated no. I asked her if he touched her back—her back part. And she said no. And then I asked her if he made her touch him. She said no. Then I asked her if he made her put her mouth anywhere. She said no. And then I asked if anything was put inside of her. She said no. And I asked if it had ever happened before and she said yes when it was cold out.

Q. Okay.

A. And then she continued to say that he put his mouth on her, but he didn't hurt her that time."

Initially, S.G. would not look at Reents, but instead looked down at her ID bracelet as she twisted the bracelet around her wrist. Later, S.G. was cooperative and answered Reents' questions. Reents testified that in questioning S.G., Reents phrased her questions "very open ended to just let [S.G.] just say whatever." Reents also noticed some bruising on the left side of S.G.'s neck.

Dr. Michael Meinzen testified that he was the physician on duty at the hospital emergency room to which S.G. was brought. Meinzen said he spoke with S.G. shortly after 8 a.m. in order to obtain a history from the patient for the purposes of making a diagnosis and treating her medically if that was needed. Meinzen attached great importance to obtaining a history from a patient, noting that, "in medicine we're taught that 90 percent of our diagnosis is based on the history. You listen to what the person tells you and then decide where to go from there, what areas to focus on."

Meinzen was asked to testify about what S.G. had told him, and defense counsel objected. The State again urged two separate grounds for the admissibility of this testimony—spontaneous declaration and section 115—13 of the Code—and the court overruled the objection.

Meinzen then testified that after S.G. told him "Randy" awakened her, she told him the following:

"A. *** [W]e asked her to direct attention to what—where was it that she was touched. She said he put his hands over her mouth and on her neck. And asked what else happened. And she said that he put his mouth down there. We tried to get her to be more specific. And asked her to point and touch where exactly he had placed his mouth. And she pointed in the—in the area of her external genitalia.

Q. [By prosecutor:] All right.

A. At that point asked her was she hurt anywhere. And she didn't state that she was in any pain at that particular time. She was rubbing an area on her neck that initially then we di-

rected her attention elsewhere and she didn't seem to be holding that area too much more. Specific questions then that we asked was she hurting anywhere in her genital area. And breaking it down you know into children's terms pointing and asking her specifically where she pee-pee and where she pointed was she hurting anywhere there. And she said no that she wasn't. We asked had anything put in they're [sic]. Had he put any finger in or any other things. She said that nothing had been pushed into her. And we encourage her to identify her anatomy a little bit more so we knew what we were talking about.

Q. Okay.

A. Then asked her a lot of these questions were asked very slowly to make sure that she understood what we were talking about. And, you know, case was such she just said that only that he placed his mouth over her external genitalia and just pointed in that general region. We asked whether she had had to touch him anywhere. Whether she had to place her mouth or anything on any of his parts. And she said that she had not."

The physician described S.G. as "calm and comfortable" when he spoke to her.

As stated earlier, the alleged victim, S.G., did not testify. The entire State's case consisted essentially of the testimony of the witnesses as described earlier in this opinion. Defendant's challenge to the admissibility of their testimony concerning what S.G. told them requires us to consider, in turn, three separate evidentiary issues: (1) spontaneous declarations; (2) statements to medical personnel under section 115—13 of the Code; and (3) the claim that these hearsay exceptions are invalid unless the prosecution produces the declarant for cross-examination or demonstrates that the declarant is unavailable.

### I. SPONTANEOUS DECLARATIONS AS AN EXCEPTION TO THE HEARSAY RULE

■ A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition is admissible as a hearsay exception. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §803.3, at 550 (4th ed. 1984).) This "spontaneous declaration" exception to the hearsay rule was explained by the Illinois Supreme Court in *People v. Poland* (1961), 22 Ill. 2d 175, 174 N.E.2d 804, where the court stated the following:

"There has emerged, as a recognized exception to the hear-

say rule, the principle that, under certain conditions, what have been variously characterized as 'spontaneous declarations' or 'excited utterances' are properly admissible as an exception to the hearsay rule. Perhaps the classic statement of the reason underlying this exception is that of Wigmore (6 Wigmore, Evidence, 3d ed., sec. 1747):

'This general principle is based upon the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts.'

The rule has been succinctly stated by the Supreme Court of California: 'When a declaration is made under the immediate influence of the occurrence to which it relates and so near in time as to negative any probability of fabrication, said declaration is admissible.' *Showalter v. Western Pacific Railroad Co.*[,] 16 Cal.2d 460, 106 P.2d 895, 899.

Three factors are necessary to bring a statement within this exception to the hearsay rule: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence. (6 Wigmore, Evidence, 3d ed. sec. 1950; Cleary, Handbook of Illinois Evidence, sec. 13.28)." *Poland*, 22 Ill. 2d at 180-81, 174 N.E.2d at 806-07.

The Illinois Supreme Court recently had occasion to consider the spontaneous declaration exception to the hearsay rule in a case similar to this one. In *People v. Nevitt* (1990), 135 Ill. 2d 423, the supreme court reviewed a case in which the defendant was convicted of aggravated criminal sexual assault upon a three-year-old child, J.B. As stated by the supreme court, one of the issues before it was "whether an interval of as much as five hours between an alleged incident of sexual abuse and a three-year-old child's out-of-court declaration to

his mother concerning the alleged incident precludes the statement's admission under the excited utterance exception to the hearsay rule despite other indicia of reliability[.]" *Nevitt,* 135 Ill. 2d at 433.

In *Nevitt,* J.B.'s mother gave J.B. his customary morning bath before taking him to his day-care and educational center for the day. While bathing J.B., his mother checked him from head to toe, including his genital area, for diseases, scratches, and sores, but found nothing out of the ordinary. His mother testified that on arrival at the day-care center, she escorted her son to his classroom and placed his hand in the hand of the defendant, Nevitt.

When she picked up her son at approximately 3 p.m. that same day, he appeared withdrawn. He did not come up to greet her, nor did he say anything to her on their trip home. After arriving at home, J.B. did not eat his afternoon snack with his usual enthusiasm. His mother asked him what was wrong. J.B. blurted out, " 'Teacher Tony bit my dingdong.' " (*Nevitt,* 135 Ill. 2d at 434.) J.B. then demonstrated with an object what had occurred earlier that day.

J.B.'s mother then summoned her mother, who resided in a downstairs apartment. Both women then inspected J.B.'s penis and noted " 'a pinkish coloration around the head' " about the size of a dime. (*Nevitt,* 135 Ill. 2d at 434.) When the grandmother touched the boy's penis, he "hollered 'ouch' and 'it's sore.' " *Nevitt,* 135 Ill. 2d at 434.

Based upon the testimony of J.B.'s mother concerning what J.B. told her, as well as other evidence presented by the State, including defendant's written admission to performing the acts in question, Nevitt was convicted. The appellate court reversed his conviction and remanded for a new trial, finding that the prosecution failed to provide a proper foundation for J.B.'s mother's identification of defendant as "Teacher Tony." (*People v. Nevitt* (1988), 174 Ill. App. 3d 326, 528 N.E.2d 307.) Because of this lack of foundation, the appellate court held that J.B.'s out-of-court statement to his mother was inadmissible.

The State appealed that decision and the defendant requested cross-relief from the supreme court. Defendant argued that both the trial and appellate courts erred when they found that J.B.'s out-of-court statement to his mother met the requirements of the excited-utterance exception to the hearsay rule. The supreme court reversed the appellate court and stated the following:

"Defendant argues that the time period between the alleged incident and the child's statement to his mother demonstrates that the declaration was not spontaneous. Defendant points out that the child said nothing to his mother when she picked him

up at [the day-care center], during the drive home and for a time after they arrived. Defendant also notes that the child made the statement in response to his mother's questioning and that the statement occurred as long as five hours after the alleged incident. Finally, defendant argues that J.B.'s out-of-court statement to his mother is so ambiguous that it cannot be said that the declaration related to the circumstances of the occurrence.

This court has recognized a number of exceptions to the rule prohibiting the admission of hearsay evidence, finding that the statements which fall within the exceptions, and are therefore admissible, demonstrate sufficient guarantees of reliability or trustworthiness despite the inability of an opponent to cross-examine the declarant before the trier of fact. (See, *e.g., People v. Clark* (1972), 52 Ill. 2d 374, 389.) As defendant notes, one of the factors to consider in determining the admissibility of a hearsay statement under the spontaneous declaration exception is the absence of time to fabricate. See *People v. Poland* (1961), 22 Ill. 2d 175, 181.

As defendant points out, the time that elapsed between the incident and the declaration here would generally render the statement inadmissible hearsay. However, given the circumstances present in this case, we find that the trial judge's ruling that three-year-old J.B.'s statement was reliable and within the excited utterance exception to the hearsay rule was not an abuse of discretion. See *People v. Shum* (1987), 117 Ill. 2d 317, 343 ('time factor is an elusive element and will vary with the facts of the case'); M. Graham, Cleary & Graham's Handbook of Illinois Evidence §803.3, at 552 (4th ed. 1984) ('Lapse of time is but one factor to be considered by the court in reaching an answer [of whether the statement is an excited utterance] in the particular case. Other factors include the nature of the event, the mental and physical condition of the declarant, and the presence or absence of self-interest').

We believe that the evidence at trial sufficiently demonstrates that the child's statement was the product of the event, rather than the child's deliberation. J.B.'s behavior demonstrated the effect the incident had on the child. Although he usually greeted his mother with outward affection, he was on this occasion quiet and withdrawn. He remained uncharacteristically silent during the two-block drive from [the day-care center] and upon his arrival at home. His unusual behavior continued

through the afternoon snack. The first time J.B. had an opportunity to relate the incident to anyone away from the environment in which the incident occurred was when his mother picked him up from the center. Although he said nothing about the incident during the drive to his home, his first statement to his mother related to the incident. At that time, according to his mother, the child was still visibly upset and withdrawn. Under the circumstances here, it is not unreasonable to believe that the mother's question to her three-year-old son, asking him 'what's wrong,' elicited an unreflected and spontaneous declaration concerning an incident that occurred earlier in the day. (*Cf. People v. Gacho* (1988), 122 Ill. 2d 221, 241 (declaration 6½ hours after occurrence was spontaneous when victim confined in trunk in seriously wounded condition and utterance was given in response to question on first opportunity for victim to speak).) We find no evidence that would explain a motive for the child to fabricate the statement, and the terminology contained in the child's declaration substantiates its reliability. (See *State v. Ryan* (1984), 103 Wash. 2d 165, 691 P.2d 197 (whether language of statement was likely to have been used by a child the age of declarant important in determination of statement's reliability).) That the statement came in response to a question put to him by his mother does not affect its credibility. The question was not suggestive and only prompted J.B. to speak." *Nevitt*, 135 Ill. 2d at 443-46.

In the present case, defendant concedes that the statements S.G. made to DeVore, S.G.'s baby-sitter, meet the criteria for admission as spontaneous declarations. Defendant argues, however, that S.G.'s statements to Grigsby (S.G.'s mother) and to Officer Lewis, Nurse Reents, and Dr. Meinzen do not meet those criteria. We will address this argument only with regard to S.G.'s statements to Grigsby and Lewis. Because we find that S.G.'s statements to Reents and Meinzen were properly admitted under section 115—13 of the Code (as discussed in the next section of this opinion), we need not consider whether those statements might also be admissible as spontaneous declarations.

S.G.'s statements to DeVore about the incident occurred literally within moments of DeVore's seeing defendant flee the scene of the crime he allegedly had just committed. About 30 minutes after S.G.'s statements to DeVore, S.G.'s mother, Grigsby, returned home, and S.G. told Grigsby what had happened. Grigsby then called the police, and Officer Lewis arrived "just a few minutes" after she called. In

the kitchen of her home, S.G. spoke to Lewis with no one else present. On this record, it appears that these three separate statements of S.G. were all made within 45 minutes of her being sexually assaulted in her bed.

Defendant argues that S.G.'s statement to Grigsby was not a spontaneous declaration because S.G. had "calmed down" and was no longer reacting to a startling occurrence. Defendant cites other factors as being inconsistent with S.G.'s statements being spontaneous declarations, such as Grigsby's urging her daughter "to tell me what happened" and that S.G. was initially reluctant to do so. With regard to S.G.'s statements to Lewis, defendant makes these same arguments.

In *People v. Harris* (1985), 134 Ill. App. 3d 705, 480 N.E.2d 1189, the court discussed the factors which should be considered in deciding whether a statement qualifies as a spontaneous declaration and stated the following:

> "Whether a statement was sufficiently spontaneous to qualify for admission and evidence under this exception to the hearsay rule is a preliminary question for determination by the trial court. [Citation.] The court's ruling will be held an abuse of discretion only if the statements are not so intimately connected with the event as to indicate a lack of premeditation. [Citation.] In deciding whether the declarant acted without thought, the court is required to consider all the circumstances surrounding the making of the statement. [Citation.] The time which elapsed between the occurrence and the declaration and the distance which the declarant travelled from the scene before making the declaration are both material in determining spontaneity. However, neither factor is controlling. [Citation.] Also, the fact that the statement was made in response to a question will not itself deprive an utterance of the requisite spontaneity to establish its admissibility. Thus, statements made in response to general inquiries as to what has occurred may nevertheless be spontaneous." *Harris*, 134 Ill. App. 3d at 711, 480 N.E.2d at 1194-95.

We also agree with the following remarks from *People v. Bitler* (1986), 146 Ill. App. 3d 477, 497 N.E.2d 137, which dealt with out-of-court statements by declarants of tender years who did not testify at trial:

> "The trial court must look to the surrounding circumstances to determine whether there was an opportunity for reflection and invention. [Citation.]
>
> Illinois courts have recognized that special circumstances ex-

ist concerning the motivations behind the statements of very young children. The reason that their statements are admitted is that it is unlikely that a child of tender years will have any reason to fabricate stories of sexual abuse. (*In re Marriage of Theis* (1984), 121 Ill. App. 3d 1092, 460 N.E.2d 912; *People v. Chatman* (1982), 110 Ill. App. 3d 19, 441 N.E.2d 1292.) In Wisconsin, the courts have noted that the stress of a sexual assault upon a child will remain with the child long after it occurred, and that the child's statements will be unfabricated for three reasons: (1) the child is apt to repress the incident; (2) it is often unlikely the child will discuss such a stressful incident with anyone but the mother; and (3) the characteristics of young children work to produce declarations free of conscious fabrication for a longer period after the incident than adults. *State v. Padilla* (Wis. App. 1982), 110 Wis. 2d 414, 329 N.W.2d 263.

We agree here, as we did in *Theis*, with the *Padilla* court's analysis; and we find that the victims had neither the time nor the opportunity to fabricate the statements, even assuming, *arguendo*, that the defendant molested the victims 24 hours prior to the relevant statements." *Bitler*, 146 Ill. App. 3d at 481-82, 497 N.E.2d at 139.

■■ ■ Based on the foregoing authority, we find defendant's arguments to be unpersuasive. The trial court has considerable discretion in determining whether a statement is admissible as a spontaneous declaration, and its decision will not be reversed absent an abuse of that discretion. (*Bitler*, 146 Ill. App. 3d at 481, 497 N.E.2d at 139.) On the facts in this case, the trial court did not abuse its discretion in deciding that S.G.'s statements to DeVore, Grigsby, and Lewis were all spontaneous declarations and admissible.

## II. STATEMENTS UNDER SECTION 115—13 AS AN EXCEPTION TO THE HEARSAY RULE

As noted earlier, the trial court permitted Nurse Reents and Dr. Meinzen to testify as to statements S.G. made to them. When defense counsel objected to their testimony on the grounds that it would be hearsay, the State responded that the testimony was proper on the grounds that the statements of S.G. were (1) spontaneous declarations, and (2) made to medical personnel for purposes of medical diagnosis or treatment, and thus, admissible under section 115—13 of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 115—13). Section 115—13 of the Code reads as follows:

"In a prosecution for violation of Sections 12—13, 12—14,

12—15 or 12—16 of the 'Criminal Code of 1961', statements made by the victim to medical personnel for purposes of medical diagnosis or treatment including descriptions of the cause of symptom, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admitted as an exception to the hearsay rule."

That section was added to the Code on January 1, 1988, and the only reported decision of which we are aware in which the Illinois Supreme Court or the Illinois Appellate Court construes it is the decision of this court in *People v. Rushing* (1989), 192 Ill. App. 3d 444, 548 N.E.2d 788.

In *Rushing*, the defendant argued that the testimony of the physician who examined and spoke with the nine-year-old complainant in that aggravated criminal sexual abuse case improperly included details of the alleged offense that were not relevant to the complainant's diagnosis and treatment. The physician's examination occurred approximately one month after the alleged incident of sexual abuse. The physician testified the complainant told the physician that the defendant (whose name the physician mentioned) told complainant not to tell anyone; that if she did tell, he would go to jail, and when he got out, he would kill her mother and father. (*Rushing*, 192 Ill. App. 3d at 447, 548 N.E.2d at 790.) This court rejected defendant's argument and stated the following:

"In examining and treating such complaints of a nine-year-old girl suspected of sexual abuse, details of the sexual acts were certainly pertinent. Under the same circumstances, the threat was relevant to D.B.'s [the victim's] state of mind and emotional condition. All the statements were relevant in determining the approximate time of the alleged act and to the credibility of D.B. These are all matters which would reasonably be considered and relied upon by medical personnel in making any diagnosis or conclusion as to a patient's condition and proper course of treatment. Thus, the statements were also admissible under section 115—13." *Rushing*, 192 Ill. App. 3d at 453, 548 N.E.2d at 793-94.

As this court indicated in *Rushing*, we hold that section 115—13 of the Code evinces a legislative intent that the phrase "descriptions *** insofar as reasonably pertinent to diagnosis or treatment" should be liberally construed. (Ill. Rev. Stat. 1987, ch. 38, par. 115—13.) The legislature directed that statements containing such descriptions *shall* be admissible. A crabbed interpretation of that phrase, re-

quiring trial courts to parse statements made by a victim when a medical history is taken, would be inconsistent with legislative intent.

■ The testimony of Nurse Reents and Dr. Meinzen describing the questions they asked of S.G. and the reasons why those questions were asked makes clear that the statutory prerequisites for this new hearsay exception were met. Meinzen especially emphasized the importance of taking a history from the patient in order to properly make a diagnosis and decide upon further treatment, if any.

■ Defendant also argues that S.G.'s statements to Meinzen and Reents concerning the details of the incident do not fall within the treating-physician exception to the hearsay rule. Citing *People v. Walton* (1976), 43 Ill. App. 3d 74, 356 N.E.2d 1131, defendant claims that while a treating physician may testify about a patient's statements concerning presently existing bodily conditions, the doctor may not relate the patient's statements which concern details of the alleged offense. We disagree. We conclude that section 115—13 was designed, in part, to sever the artificial restraints heretofore imposed by case law on the ability of a physician to testify about what his or her patient told the physician for purposes of medical diagnosis or treatment.

To the extent that *Walton*, an opinion of the Second District Appellate Court, is inconsistent with this holding, we decline to follow it. Section 115—13 of the Code was enacted 12 years after *Walton*, and its enactment implicitly overrules that case.

III. DEFENDANT'S CLAIM THAT THE DECLARANT MUST BE "UNAVAILABLE" OR PRODUCED BEFORE THE DECLARANT'S OUT-OF-COURT STATEMENT MAY BE ADMITTED AS AN EXCEPTION TO THE HEARSAY RULE

Defendant argues that even if the witnesses to whom S.G. spoke could properly testify to what S.G. told them under traditional or statutory exceptions to the hearsay rule, that testimony nonetheless violated his right under the sixth amendment to the United States Constitution to be confronted with the witnesses against him. Citing *Ohio v. Roberts* (1980), 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531, defendant argues as follows:

> "[E]ven where the evidence falls within a firmly rooted hearsay exception, the prosecution still must either produce the declarant for cross-examination or demonstrate that he is unavailable. *** Since the prosecution neither produced the declarant [S.G.] for cross-examination nor established that she was unavailable, Randall White was denied his Sixth Amendment right to confront the witnesses against him."

In making this argument, defendant's counsel on appeal inexplicably fails to cite or discuss *United States v. Inadi* (1986), 475 U.S. 387, 89 L. Ed. 2d 390, 106 S. Ct. 1121, in which the United States Supreme Court repudiated the interpretation of *Roberts* upon which defendant relies. Nor does counsel cite or discuss *People v. Ingram* (1987), 162 Ill. App. 3d 257, 515 N.E.2d 1252, a decision of this court which analyzed both *Roberts* and *Inadi*. The Court in *Inadi* said the following:

"We granted certiorari, [citation], to resolve the question whether the Confrontation Clause requires a showing of unavailability as a condition to admission of the out-of-court statements of a nontestifying co-conspirator, when those statements otherwise satisfy the requirements of Federal Rule of Evidence 801(d)(2)(E) [the coconspirator exception to the hearsay rule]. We now reverse.

The Court of Appeals derived its rule that the Government must demonstrate unavailability from our decision in *Roberts*. It quoted *Roberts* as holding that 'in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case *** the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant.' 448 U.S., at 65[, 65 L. Ed. 2d at 607, 100 S. Ct. at 2538]. The Court of Appeals viewed this language as setting forth a 'clear constitutional rule' applicable before any hearsay can be admitted. 748 F.2d at 818. *Under this interpretation of Roberts, no out-of-court statement would be admissible without a showing of unavailability.*

*Roberts, however, does not stand for such a wholesale revision of the law of evidence,* nor does it support such a broad interpretation of the Confrontation Clause. *Roberts* itself disclaimed any intention of proposing a general answer to the many difficult questions arising out of the relationship between the Confrontation Clause and hearsay. *** *Roberts* should not be read as an abstract answer to questions not presented in that case, but rather as a resolution of the issue the Court said it was examining: 'the constitutional propriety of the introduction in evidence of the preliminary hearing testimony of a witness not produced at the defendant's subsequent state criminal trial.' [Citation.]

The Confrontation Clause analysis in *Roberts* focuses on those factors that come into play when the prosecution seeks

to admit testimony from a prior judicial proceeding in place of live testimony at trial. See Fed. Rule Evid. 804(b)(1). In particular, the *Roberts* Court examined the requirement, found in a long line of Confrontation Clause cases involving prior testimony, that before such statements can be admitted the government must demonstrate that the declarant is unavailable. [Citations.] All of the cases cited in *Roberts* for this 'unavailability rule' concern prior testimony. ***

    *Roberts* must be read consistently with the question it answered, the authority it cited, and its own facts. *** *Roberts cannot fairly be read to stand for the radical proposition that no out-of-court statement can be introduced by the government without a showing that the declarant is unavailable."* (Emphasis added.) *Inadi*, 475 U.S. at 391-94, 89 L. Ed. 2d at 396-98, 106 S. Ct. at 1124-25.

The above-quoted language from *Inadi* makes clear that the decision in *Roberts* must be restricted to the factual context in which *Roberts* arose, *i.e.*, "the constitutional propriety of the introduction in evidence of the preliminary hearing testimony of a witness not produced at the defendant's subsequent state criminal trial." (*Roberts*, 448 U.S. at 58, 65 L. Ed. 2d at 602, 100 S. Ct. at 2535.) The discussion in *Roberts* of hearsay exceptions unrelated to the particular exception which the State in that case was arguing was wholly unnecessary to the decision reached. Indeed, that discussion may be the "Sistine Chapel" of *obiter dicta*.

    ■ Because of the uncertainty that *Roberts* caused regarding the application of exceptions to the hearsay rule, it is necessary that we be clear and emphatic in our holding on this point: Whether the out-of-court declarant is unavailable is totally irrelevant to the determination of whether an out-of-court statement of that declarant is admissible under an exception or exemption to the hearsay rule. The only exception to this holding is the factual situation present in *Roberts, i.e.*, the use at trial of the previous testimony of a witness who is no longer available.

We provide the foregoing emphasis because, despite the clear language of *Inadi*, we conclude the decisions of other courts have not given full effect to *Inadi*'s repudiation of the *dicta* in *Roberts*. For instance, in *Nelson v. Farrey* (7th Cir. 1989), 874 F.2d 1222, the United States Court of Appeals for the Seventh Circuit had occasion to consider the effect of *Inadi* upon *Roberts* and stated the following:

    "Six years [after *Roberts* was decided] the Supreme Court disavowed any suggestion that *Roberts* had stated a general rule,

confined the case to the particular situation presented by it—a prosecutor's attempt to use the transcript of testimony from a previous judicial proceeding in lieu of live testimony at trial— and allowed the admission of out-of-court statements by a co-conspirator who was available to testify. [Citation.]

At present, then, there is no single authoritative criterion for when the admission of hearsay evidence violates a defendant's constitutional right to confrontation." *Nelson*, 874 F.2d at 1227.

*Nelson* concerned a prosecution for a sex offense. Judge Flaum wrote a concurring opinion in *Nelson* in which he specifically disagreed with the majority assertion that the unavailability of the complainant was not a constitutional "sine qua non of allowing her out of court statements to be used in evidence against her father." (*Nelson*, 874 F.2d at 1230 (Flaum, J., concurring).) Judge Flaum opined that the confrontation clause required the prosecution to show that the complainant was not available to testify at trial. He concurred because he believed the prosecution had done so. He also made the following observations:

"The general language contained in *Roberts* prompted many courts to conclude that a demonstration of the declarant's unavailability was a constitutional pre-condition to the admission of most hearsay statements. [Citation.] The validity of this interpretation of *Roberts*, however, is suspect in view of [*Inadi*]. *** In the course of the opinion [in *Inadi*], the Court employed language that could be interpreted as repudiating the unavailability discussion in *Roberts*.

*** Given its broadest construction, *Inadi* stands for the proposition that the unavailability of the declarant is a relevant constitutional factor only when the hearsay statements involve testimony given at a preliminary hearing. In my view, however, *Inadi* does not represent a repudiation of *Roberts'* unavailability discussion. Rather, I believe that *Inadi* merely reaffirms and applies the *Roberts* principle that a showing of unavailability is not required in all situations." *Nelson*, 874 F.2d at 1231 (Flaum, J., concurring).

We cite the foregoing language from Judge Flaum's concurring opinion because, with all due respect, we emphatically disagree. Our disagreement in part is due to the presence of a dissenting opinion in *Inadi* by Justice Marshall in which he vigorously condemns the majority opinion for limiting *Roberts* as we have now found it to be so limited. (*Inadi*, 475 U.S. at 400-11, 89 L. Ed. 2d at 402-09, 106 S.

Ct. at 1129-34 (Marshall, J., dissenting).) We also find significant that Justice Blackmun, the author of *Roberts*, joined the majority opinion in *Inadi*, not the dissent of Justice Marshall.

Further, we have difficulty understanding the reasoning behind Judge Flaum's conclusion that *Inadi* did not repudiate the broad-based "unavailability" discussion of *Roberts*. In our judgment, the Supreme Court, in the language we quoted from *Inadi, repeatedly* repudiates this *Roberts dicta.* Our question for those who think otherwise is this: If, in fact, the court *intended* to repudiate the *Roberts dicta,* what language could it have used to get the job done that was any stronger than the language actually employed?

We also disagree with *People v. Rocha* (1989), 191 Ill. App. 3d 529, 547 N.E.2d 1335, to the extent that decision holds the "unavailability" doctrine of *Roberts* to be still valid. In *Rocha*, the Second District Appellate Court had occasion to construe section 115—10 of the Code in its most recent version, as amended by Public Act 85—837, effective January 1, 1988 (1987 Ill. Laws 3471). (Ill. Rev. Stat. 1987, ch. 38, par. 115—10.) That statute provides that out-of-court statements of the alleged victim under the age of 13 in a prosecution for a sexual act may be admitted under certain circumstances. One of those circumstances is if the child either (1) testifies at the proceeding, or (2) is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement. Ill. Rev. Stat. 1987, ch. 38, pars. 115—10(b)(2)(A), (b)(2)(B).

In *Rocha*, the second district discussed not only this statutory requirement of unavailability, but also the issue of the witness' unavailability in view of the confrontation clause of the sixth amendment to the United States Constitution. In doing so, it spoke approvingly of the "unavailability" doctrine of *Roberts*, and it evaluated section 115—10 of the Code to determine whether that section met the criteria discussed in *Roberts.* The court concluded that the statute did so. *Rocha*, 191 Ill. App. 3d at 541, 547 N.E.2d at 1343.

The second district in *Rocha* cited *Inadi* as being a "recent Supreme Court decision which questions whether the *Ohio v. Roberts* analysis is even applicable outside of the factual setting of that case." (*Rocha*, 191 Ill. App. 3d at 541, 547 N.E.2d at 1343.) The *Rocha* decision is unclear regarding the continuing validity of the *Roberts dicta,* but, as before, we emphasize that we disagree with the holding in *Rocha* to the extent that it concludes *Roberts* has any application beyond the limited factual circumstances that case addressed.

In reaching its holding in *Rocha* with regard to *Roberts*, the sec-

ond district relied heavily on *People v. Bastien* (1989), 129 Ill. 2d 64, 541 N.E.2d 670, a case in which the Illinois Supreme Court held unconstitutional a statute authorizing the admissibility of the taped statement of the child-victim in a case involving charges of sexual abuse when the alleged victim was available at trial for cross-examination. We conclude this reliance was in error. In *Bastien*, the supreme court was dealing with a situation in which the prosecution, as in *Roberts*, was attempting to use a witness' *prior testimony* given by videotape in lieu of that witness being called upon to give her direct examination at trial. As we stated earlier, in these circumstances, *Roberts* still has validity, *but only in these circumstances*. In our judgment, the Second District in *Rocha* gave importance to *Roberts* beyond its factual context. *Bastien* lends no support to such an interpretation.

We also note that our position regarding *Roberts* and *Inadi* is consistent with the views expressed by the Third District Appellate Court in *People v. Unes* (1986), 143 Ill. App. 3d 716, 722-23, 493 N.E.2d 681, 685-86.

We agree with the views expressed on this subject in a recent decision of the supreme court of Washington in *State v. Palomo* (1989), 113 Wash. 2d 789, 783 P.2d 575. In *Palomo*, a police officer observed two persons struggling in a doorway. When he approached the scene, he observed a man kneeling on top of a woman. The woman was lying on her back. The man's pants were unbuttoned, unzipped, and fully opened in front. The woman's pants were undone and down around her knees. The man appeared to be pulling at the woman's pantyhose. He had one hand on the woman's waist and the other hand on her pantyhose. The woman was hitting and scratching the man and was screaming for help. The officer separated them and observed what appeared to be fresh scratches on the man's face. He arrested the man, who was the defendant, Palomo. As the officer did so, he testified that the woman was " 'crying, weeping, very upset.' " (*Palomo*, 113 Wash. 2d at 791, 783 P.2d at 576.) He further testified, " '[s]he said he was trying to rape me, get him away from me.' " *Palomo*, 113 Wash. 2d at 791, 783 P.2d at 576.

The defendant was charged with the attempt (rape) of E.S., but for some unexplained reason, E.S. did not testify. The prosecutor presented a case consisting entirely of the testimony of the arresting officer. Defense counsel objected to the admission of the statement as hearsay, but the objection was overruled. The defendant did not testify.

After all of the evidence was presented, the defense argued for

dismissal on the ground that the admission of the alleged victim's hearsay statement violated the defendant's right to confrontation under the United States Constitution and the Washington State Constitution because her unavailability had not been established. That argument was rejected, and defendant was convicted of attempt (rape) as charged.

On appeal of this conviction, the Washington Court of Appeals, in an unpublished opinion, held that the admission of the out-of-court hearsay statement without the showing of a good-faith effort to produce the witness violated defendant's right to confrontation.

On review of that decision, the supreme court of Washington noted that the trial court admitted the police officer's testimony, reciting the alleged victim's statement, under the "excited utterance" exception to the hearsay rule. The supreme court found the statement properly admitted under that recognized exception and noted that the court of appeals and defendant both relied on *Roberts* for the broad proposition that the confrontation clause bars admissibility of hearsay statements unless the unavailability of the out-of-court declarant is shown. The Washington Supreme Court then stated the following:

> "*Roberts* considered an Ohio statute that required a showing of unavailability for admission of *prior testimony*. In the present case, the statement of [E.S.] was admitted under the *excited utterance* exception to the hearsay rule which *does not require unavailability of the declarant*. [Citations.]
>
> Furthermore, *United States v. Inadi* [citation], limited the *Roberts* requirement of unavailability to cases involving prior testimony. [Citations.] *Ohio v. Roberts, supra, is not authority for requiring a showing of unavailability for admission of an excited utterance.* [Emphasis added.]
> * * *
> The 'excited utterance' exception to the hearsay rule applies even though the declarant is available as a witness. *A showing of unavailability is not required.* [Emphasis added.] [Citations.] The theory of this exception which vouches for its reliability is that the stress of the event suppresses the reflective faculties of the declarant with the result that the utterances are sincere and spontaneous. * * *
> * * * Although statements of co-conspirators are an *exemption* to the hearsay rule and excited utterances are an *exception* to the hearsay rule, *Inadi* noted that the same confrontation clause principles apply to both exemptions and exceptions."

(Emphasis in original unless otherwise noted.) *Palomo*, 113 Wash. 2d at 795-97, 783 P.2d at 578-79.

The court concluded by noting that defendant was not denied his sixth amendment right to confrontation. "Under the excited utterance exception to the hearsay rule, [E.S.'s] out-of-court statement is admissible without a showing of her unavailability." *Palomo*, 113 Wash. 2d at 798, 783 P.2d at 579-80.

■ In *People v. Ingram* (1987), 162 Ill. App. 3d 257, 515 N.E.2d 1252, this court was presented with the same argument that is being made in the present case, *i.e.*, that before a spontaneous declaration can be received into evidence, the confrontation clause normally requires a showing that the out-of-court declarant is unavailable. *Roberts* and *Inadi* were considered, and this court then rejected this argument, holding as follows:

"In *United States v. Inadi* [citation], the court held the *Roberts* requirement of a showing of unavailability was inapplicable to the coconspiracy exception to the hearsay rule. The court noted that *Roberts*, which addressed the admissibility of prior testimony, should be limited to its facts. It does not stand for the proposition that no out-of-court statement is admissible absent a showing of unavailability.

In Illinois prior to admission of an out-of-court statement under the spontaneous declaration exception to the hearsay rule, the statement must meet three criteria: (1) it must have resulted from an occurrence which is sufficiently startling that it was likely to produce a spontaneous and unreflecting statement; (2) it must have been made before there was time to fabricate the statement; and (3) it must have been related to the occurrence. *People v. Lewis* [citation]; *People v. McNeal* [citation]; *People v. Fields* [citation].

Defendant argues that *Roberts* modified State law concepts by adding requirements of unavailability and reliability and spontaneous declarations from unknown declarants can never be admitted. He urges this court to overrule *McNeal* to the extent that it is inconsistent with *Roberts*. In *McNeal*, defendant was convicted of aggravated battery arising out of a fight which occurred in a tavern. A witness testified that he heard an unknown declarant advise the defendant not to do it immediately prior to defendant's shooting the victim. The court held the testimony was admissible regardless of the declarant's presence at trial because it met the criteria set forth for an excited utterance. [Citations.] ***

*Roberts* as interpreted by *Inadi* does not require a modification of *McNeal*." *Ingram*, 162 Ill. App. 3d at 260-61, 515 N.E.2d at 1254.

We reaffirm our holding in *Ingram*.

## IV. SENTENCING ISSUES

Defendant was convicted of aggravated criminal sexual assault, residential burglary, and unlawful restraint, and he was sentenced respectively to 10 years, 6 years, and 2 years in prison. Each of these sentences was ordered to run concurrently with the others. Aggravated criminal sexual assault is a Class X felony (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(c)), meaning it is a nonprobationable offense that carries a possible prison sentence of not less than 6 years nor more than 30 years (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(3)). Residential burglary is a Class 1 felony (Ill. Rev. Stat. 1987, ch. 38, par. 19—3(b)), meaning it carries a possible prison sentence of not less than 4 years and not more than 15 years (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(4)). Unlawful restraint is a Class 4 felony (Ill. Rev. Stat. 1987, ch. 38, par. 10—3(b)), meaning it carries a possible prison sentence of not less than one year nor more than three years (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(7)).

At the sentencing hearing the court permitted a sheriff's investigator, over defense counsel's objection, to testify to a conversation the investigator had with a seven-year-old female. The child said defendant entered her bedroom while she was asleep, took off his pants and underwear, removed the child's pajama bottoms and undies, and then hurt the child by lying on top of her. She told the investigator that she called for her mother, who eventually entered the room and told the defendant to leave the residence. Citing *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344, defendant argues that the admission of this hearsay evidence, in the absence of any corroboration, was error because the evidence was not reliable and improperly prejudiced him in the eyes of the sentencing court.

Upon review of defendant's record and the circumstances of the offenses he committed, we conclude we need not concern ourselves with whether the testimony of the sheriff's investigator was properly received in evidence at the sentencing hearing. See *People v. Mitchell* (1981), 98 Ill. App. 3d 398, 424 N.E.2d 658 (remand for resentencing not necessary where the record does not affirmatively demonstrate that the matter complained of was a factor in the sentence imposed).

At the time of the sentencing hearing in November 1988, defend-

ant was 36 years old. In the six years prior to that date, he had been convicted of four separate felony offenses (burglary, two counts of aggravated battery, and felony criminal damage to property), as well as two Class A misdemeanors (theft and criminal damage to property). Defendant had been sentenced to multiple periods of probation and had received a three-year sentence to the Department of Corrections in December 1984. Despite this miserable record of criminality, defendant received only a 10-year sentence on the most serious of the offenses of which he was convicted, aggravated criminal sexual assault. We note that the sentence imposed is only four years above the statutory minimum, and it is *20* years below the statutory maximum.

■■ As to the defendant's specific criminal behavior in this case, the record shows that at 4 a.m., defendant surreptitiously entered the home of a former girlfriend (who he had reason to believe would not be home) and sexually assaulted a four-year-old child as she slept in her bed. A remand for resentencing on these facts with this defendant's criminal history is unnecessary because we can hardly imagine how a sentence of less than 10 years could be imposed. Accordingly, viewing any claimed error in the admission of evidence at the sentencing hearing in a light most favorable to the defendant, we hold any such error could not have been prejudicial.

For the reasons stated, the judgment and sentences imposed are affirmed.

Affirmed.

KNECHT, P.J., concurs.

JUSTICE McCULLOUGH, specially concurring:
The trial court should be affirmed.

I agree with the majority, the testimony of Grigsby and Lewis falls within the spontaneous declaration exception to the hearsay rule. Also, the testimony of Reents and Meinzen was admissible pursuant to section 115—13 (Ill. Rev. Stat. 1987, ch. 38, par. 115—13).

I do not agree with the necessity, relevance, or reasoning of the extended discussion of unavailability and confrontation. *Inadi*, as the majority points out, involved the admissibility of a coconspirator's statements. This is not the case here. Once we determine the evidence is admissible under the spontaneous declaration exception to the hearsay rule, or proper under section 115—13, confrontation or availability is gone. As stated in the Handbook of Illinois Evidence:

"Exceptions to the general rule excluding hearsay other than admissions *** are separated into two categories: those exceptions that are not affected by the availability or unavailability of the declarant, §803 infra, and those exceptions that require that the declarant be unavailable before the hearsay statement may be admitted, §804 infra." M. Graham, Cleary & Graham's Handbook of Illinois Evidence §803.1, at 545 (4th ed. 1984).

Two statements, Grigsby's and Lewis', are spontaneous declarations. This hearsay exception is " 'firmly *** rooted in our jurisprudence.' " (Coy v. Iowa (1988), 487 U.S. 1012, 1021, 101 L. Ed. 2d 857, 867, 108 S. Ct. 2798, 2803, quoting Bourjaily v. United States (1987), 483 U.S. 171, 183, 97 L. Ed. 2d 144, 157, 107 S. Ct. 2775, 2783.) Availability or confrontation is not a needed element or criterion. Ingram, 162 Ill. App. 3d 257, 515 N.E.2d 1252.

The admissibility of the statements made to Reents and Meinzen was proper under section 115—13. Likewise, availability and confrontation are neither elements nor required for admissibility. The statements were made for proper diagnosis or treatment and met the requirements of the statute, as well as the long-standing rule.

Roberts involved a different factual setting concerning availability: preliminary hearing testimony used at trial. Here, the statement from Roberts (488 U.S. at 66, 65 L. Ed. 2d at 608, 100 S. Ct. at 2539), "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception," confirmed in Coy, determines the issue.

The statement by the majority, "that we be clear and emphatic in our holding on this point: Whether the out-of-court declarant is unavailable is totally irrelevant to the determination of whether an out-of-court statement of that declarant is admissible under an exception or exemption to the hearsay rule" (198 Ill. App. 3d at 658), is correct as to the issues in this case, spontaneous declaration and medical history, section 115—13. It is not a correct statement as to all hearsay.